UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OTHNIEL EVANS HARAGH

_____

Plaintiff

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

The Roosevelt Island operating corporation
The Roosevelt island operating board of directors
Charlene Indelicato, Claudia M. Dade, Frances Walton
Maeshwar Dougnarity, Howard Polivy, Katherine Grimm
Michael Shinozuki, Fay Freyer, Christian
Margaret Smith, Donald Krout, Mark Beth Labate
and Harry R. Joehn in their official and individual capacities

*(In the space above enter the full name(s) of the defendant(s).* Defendants
*If you cannot fit the names of all of the defendants in the space*
*provided, please write "see attached" in the space above and*
*attach an additional sheet of paper with the full list of names.*
*Typically, the company or organization named in your charge*
*to the Equal Employment Opportunity Commission should be*
*named as a defendant.  Addresses should not be included here.)*

# 16 CV 7530

## COMPLAINT
## FOR EMPLOYMENT
## DISCRIMINATION

Jury Trial:  ☑ Yes  ☐ No
*(check one)*

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

✓     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).
**NOTE:** *In order to bring suit in federal district court under Title VII, you must first obtain a*
*Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

✓     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621 - 634.
**NOTE:** *In order to bring suit in federal district court under the Age Discrimination in*
*Employment Act, you must first file a charge with the Equal Employment Opportunity*
*Commission.*

_____     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
12117.
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act,*
*you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity*
*Commission.*

✓     New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age,
race, creed, color, national origin, sexual orientation, military status, sex,
disability, predisposing genetic chacteristics, marital status).

✓     New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
131 (actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, partnership status, sexual orientation, alienage,
citizenship status).

## I.   Parties in this complaint:

**A.**   List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff   Name  OTHNIEL EVANS MARAGH
Street Address  439 E 3rd Street 1
County, City  Mount Vernon
State & Zip Code  NY   10553
Telephone Number  (678) 427-8649

**B.**   List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant   Name  Charlene Indelicato
Street Address  591 Main Street
County, City  Roosevelt Island
State & Zip Code  NY   10440
Telephone Number  _____

**C.**   The address at which I sought employment or was employed by the defendant(s) is:

Employer  Roosevelt Island Operating Corp.
Street Address  591 Main Street
County, City  Roosevelt Island
State & Zip Code  NY   10044
Telephone Number  (212) 832-4540

## II.   Statement of Claim:  See Attached

State as briefly as possible the <u>facts</u> of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include other details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

**A.** The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

| | |
|---|---|
| _____ | Failure to hire me. |
| ✓ | Termination of my employment. |
| ✓ | Failure to promote me. |
| _____ | Failure to accommodate my disability. |
| ✓ | Unequal terms and conditions of my employment. |

_____ ✓   Retaliation.

_____       Other acts *(specify)*: _____ .

**Note:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.    It is my best recollection that the alleged discriminatory acts occurred on: ~~Mid 2007, May 12, 2014~~ March 2014, August 2014, December 4, 2015
                                                                                                    *Date(s)*

C.    I believe that defendant(s) *(check one)*:

_____ ✓       is still committing these acts against me.

_____          is not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

☑ race _____          ☑ color _____

☑ gender/sex _____              ☑ religion_____

☑ national origin _____

☑ age.  My date of birth is 8/9/80  *(Give your date of birth only if you are asserting a claim of age discrimination.)*   9 of 8 is younger than 40

☐ disability or perceived disability, _____ *(specify)*

E.    The facts of my case are as follow *(attach additional sheets as necessary)*:

____ See Attach ____

_____

_____

____ ✱ Please Note my claim still need to be perfected. ____
____ I desire additional time to Perfect my final draft. ____

_____

_____

**Note:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.   **Exhaustion of Federal Administrative Remedies**:

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's  alleged discriminatory conduct on: ~~illegible~~                                              9/20/16 *(Date)*.

B.    The Equal Employment Opportunity Commission *(check one)*:

      _____   has not issued a Notice of Right to Sue letter.

      ___✓___   issued a Notice of Right to Sue letter, which I received on _June 27_ *(Date)*.

      *Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

      ___✓___   60 days or more have elapsed.

      _____   less than 60 days have elapsed.

# IV.    Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: _____

_____

_____

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ___ day of _2C_____, 201_6_.

Signature of Plaintiff _____

Address _____
               _109 E 3rd Street_
               _Mount Vernon NY 10553_

Telephone Number _(678) 427-8649_

Fax Number *(if you have one)* _____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OTHNIEL MARAGH,<br><br>    Plaintiff,<br>        vs.<br><br>THE ROOSEVELT ISLAND OPRATING<br>CORPORATION, THE ROOSEVELT ISLAND<br>OPERTING CORPORTION BOARD OF<br>DIRECTORS, CHARLENE INDELICATO,<br>CLAUDIA MCDADE, FRANCES WALTON,<br>MUNESHWAR JAGHARRY, HOWARD<br>POLIVY, KATHERINE GRIMM, MICHAEL<br>SHINOZAKI, FAY FREYER CHRISTIAN,<br>MARGARET SMITH, DAVID KRAUT, MARY<br>BETH LABATE and DARRYL TOWNS in their<br>official and individual capacities,<br><br>    Defendants. | Civil Action No. 16-CV-<br><br>**<u>COMPLAINT</u>**<br><br><br>**<u>JURY TRIAL DEMAND</u>** |

     Plaintiff Othniel Maragh, by Pro se, alleges upon personal knowledge and upon information and belief to all other matters, as follows:

## NATURE OF ACTION

1.    Plaintiff Othniel Maragh ("Plaintiff" or "Mr. Maragh"), brings this action against Defendants the Roosevelt Island Operating Corporation ("RIOC" ), Charlene M. Indelicatio, Claudia McDade, Frances Walton, Muneshwar Jagharry,

the Roosevelt Island Board of Directors (during the events at issue) including resident Directors Howard Polivy, Dr. Katherine Grimm, Michael Shinozaki, Fay Freyer Christian, Margaret Smith, David Kraut, the former New York State Director of Budget Mary Beth Labate, and the former Commissioner of the New York State Division of Homes and Community Renewal, in their official and individual capacities during the relevant events at issue.

2.     This action seeks monetary relief and dames for injuries that Plaintiff, has sustained as a result of the Defendants' unlawful acts and omissions, including race (Black) and gender (male) and age (youth) discrimination, retaliation, exposure to a hostile work environment and wrongful termination.  Defendants' conduct was willful, malicious, don in bad faith, with a depraved indifference to Plaintiff's rights, reckless and or negligent.

3.     The events giving rise to the claims in the Complaint are particularly egregious.  Plaintiff served as Purchasing Assistant/Inventory Clerk to the Corporation in a satisfactory capacity or better for nearly nine years.  Plaintiff has received 2 performance-based raises and was offered a consultation position to run a program for the Corporation.  Plaintiff was ultimately terminated December 4, 2015; Plaintiff was placed on Administrative Leave September 29, 2014 via telephone by Carlene Indelicato.  The termination was the culmination of Plaintiff being subjected to a hostile work environment, discrimination and retaliation bases upon Plaintiff's race, gender, age and that Plaintiff submitted a claim of racial discrimination September 3, 2014.  Plaintiff was the only minority (black) member of the Finance Department.  Defendants have never released any information with regard to termination.  Defendants have admitted that Plaintiff's termination was an act of retaliation.

4.     Plaintiff also asserts claims against Defendants RIOC, the Board of Directors and the Individual Directors for negligent hiring, supervision, retention and training and against the Board of Directors and Individuals Directors for failure to properly exercise their duties.

5.     Defendants' actions and conduct, inter alia, violated 42 U.S.C. () 1981 et seq. ("Section 1981"), 42 U.S.C () 1983 et seq.  ("Section 1983"), Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C () 2000e et seq.  ("Title VII"),

the New York City Human Right Law, Administrative Code () 8-107 et seq.
("NYCHRL"), the New York State Human Rights Law, N.Y. Executive Law ()290
et seq. ("NYSHRL").  Defendants' acts and omissions constituted a "continuing
violation" of these Federal and State civil rights laws (Concerning, among other
items, anti-discrimination protections, due process rights, and protection against
violation of First Amendment rights and against retaliation.

6.      Defendants' actions have caused, and will continue to cause, Plaintiff to
suffer substantial economic and non-economic damages, including without
limitation, loss of income (back and front pay), loss of future earning potential,
loss of future employment prospects, harm to Plaintiff's professional and personal
reputation, mental anguish, emotional distress, intentional inflection of emotional
distress, defamation of character.  Plaintiff seeks to recover compensatory
damages, costs, attorney's fees and other items to make Plaintiff whole for the
damages Plaintiff has suffered.  Defendants have acted intentionally, deliberately
and with malice to discriminate and retaliate against Plaintiff and/or acted in
reckless disregard for Plaintiff's protected right to be free from discrimination and
retaliation, as well established corporate policy, entitling Plaintiff to punitive
damages and to deter Defendants form repeating the same or similar unlawful
discriminatory conduct.  Plaintiff seeks dames in an amount to be determined by a
jury at trial.

## JURISDICTION AND VENUE

7.      This action arises under Title VII, 42 U.S.C Sections 1981 and 1983, New
York State and New York City anti-discrimination and anti-retaliation laws, and
common-law protections.

8.      The jurisdiction of this Court is predicated upon 28 U.S.C () ()1331, 1332,
1343, 1367(a) and the aforementioned statutory provisions.

9.      Pursuant to 28 U.S.C () 1367, this Court has supplemental jurisdiction over
Plaintiff's New York City and New York State statutory claims brought under
NYCHRL and NYSHRL and common-law claims.

10.     Plaintiff has complied with all the conditions precedent to initiating suit.
Plaintiff will submit Notice of Claim on Defendants on September 27, 2016.

11.     Plaintiff has satisfied statutory prerequisites for filing this action.  Plaintiff timely filed a charge of discrimination and retaliation "Claim Charge" with the United Stated Equal Employment Opportunity Commission ("EEOC").   The EEOC referred Plaintiff's Charge to the United States Department of Justice, Civil Rights Division and on June 27, 2016, the Department of Justice issued a Notice of Right to Sue Letter Upon Request "Notice".  This action was timely brought within (90) days of the Notice.  A copy of the Notice is annexed to this Complaint as Exhibit A.

12.     Within ten (10) days after having commenced this action, pursuant to 8 NYCRR 502(a) and (c) Plaintiff will serve a copy of this Complaint upon such authorized representatives of the City Commission of Human Rights and the Corporation Counsel.

13.     Venue is proper within this district pursuant to 28 U.S.C () () 1391 and 42 U.S.C () 2000e-5(f)(3) because RIOC's Main Office is located at 591 Main Street, New York, New York and substantial part, if not all, of the unlawful conduct which gives rise to Plaintiff's claims occurred within the Southern District of New York.

14.     Defendants are subject to personal jurisdiction in New York.

## PARTIES

I.     PLAINTIFF

15.     Plaintiff Othniel Maragh was employed by RIOC from August 23, 2006 through December 4, 2015 and was an "employee" of RIOC within the meaning of all applicable federal, state and city statutes.  Plaintiff is a resident of the State of New York.

II.     RIOC AND EMPLOYEE DEFENDANTS

16.     Defendant the Roosevelt Island Operating Corporation ("RIOC") is a public benefit corporation, located in New York City, and empowered under Chapter 196 of the New York State unconsolidated Laws to carry out the operation, maintenance, and development of Roosevelt Island.  RIOC employs more than 100 employees.  RIOC is an "employer" as well as a public employer and state actor

within the meaning of applicable federal, state and city statutes including but not limited to Title VII, Section 1981 and 1983, the New York Executive Law, the New York Civil service Law, and the New York City Administrative Code. During the relevant time, RIOC accepted Federal funds, including funding for the Franklin Delano Roosevelt Four Freedoms Park on Roosevelt Island.

17.    Defendant Charlene Indelicato ("Indelicato") is being sued in her individual and official capacity.  From in or around May 2013 through about March 2016, Defendant Indelicato was (i) the President  CEO of RIOC and as such was acting in the capacity of officer, servant, employee and/or agent of RIOC; (ii) acting under the color of the laws, statutes, ordinances, regulations, polices, customs, and/or usages of RIOC and the State of New York and within the scope of her employment (unless otherwised noted); and (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff. Defendant Indelicato has substantial policy making authority at RIOC.  During all relevant times Indelicato was a resident of the State of New York.

18.    Defendant Frances A. Walton ("Walton") is being sued in her individual and official capacity. From around January 2014 through December 2015, Defendant Walton was the Chief Financial Officer ("CFO") of RIOC and as such was (i) acting in the capacity of officer, servant, employee and/or agent of RIOC; (ii) acting under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of her employment; (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff. In her CFO capacity, Defendant Walton had substantial policy making authority at RIOC. Defendant Walton is being sued as aider and abettor. During all relevant times Walton was a resident of the State of New York.

19.    Defendant Claudia McDade ("McDade") is being sued in her individual and official capacity. From around 2007 through present (unless otherwise noted), Defendant Claudia McDade was the Director of Human Resources at RIOC and as such was (i) acting in the capacity of officer, servant, employee and/or agent of RIOC; (ii) acting under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of her employment; and (iii) actively and directly participated in the

unlawful discriminatory and retaliatory conduct directed against Plaintiff. In her Director of Human Resources capacity, McDade had substantial policy making authority at RIOC. Defendant McDade is also being sued as aider and abettor. During all relevant times McDade was a resident of the State of New York.

20.     Defendant Muneswar Jagharry ("Joe") is being sued in his individual and official capacity. From around 2007 through present (unless otherwise noted), Defendant Muneswar Jagharry was the Comptroller at RIOC and as such was (i) acting in the capacity of officer, servant, employee and/or agent of RIOC; (ii) acting under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of her employment; and (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff. In his Comptroller capacity, Jagharry had substantial policy making authority at RIOC. Defendant Jagharry is also being sued as aider and abettor. During all relevant times Jagharry was a resident of the State of New York.

### III.     RIOC BOARD OF DIRECTORS AND DIRECTOR DEFENDANTS

20.     Defendant RIOC Board of Directors (the "Board") governs the Corporation and pursuant
to RIOC's enabling legislation, the Board is to be composed of nine members, including the Commissioner of the New York State Division of Housing and Community Renewal (or his or her designee), who serves as the Chair; the New York State Budget Director (or his or her designee); and seven public members appointed by the Governor with the advice and consent of the Senate. Of the seven public members, five members must be Roosevelt Island residents ("Resident Directors"). At all times relevant to this action, the Board was comprised of eight members with one seat remaining vacant. Six of the eight members were residents of Roosevelt Island. The Board sets RIOC policy and is responsible for the business affairs of the corporation. The Board is also responsible for the hiring and firing of executives and, among other things, supervising and monitoring the conduct of executives while in office.

### IV.     RESIDENT DIRECTOR DEFENDANTS

22.    Defendant Micael Shinozaki ("Sinozaki"), a resident of Roosevelt Island, is being sued in his individual and official capacity as a member of the RIOC Board. At all times relevant to this action, Shinozaki was (i) acting as an agent of RIOC, a public benefit corporation of the State of New York; (ii) under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of his duties; (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff, and (iv) failed to ensure nondiscriminatory working conditions and/or ratified or condoned the conduct alleged herein. Shinozaki is also being sued as aider and abettor. During all relevant times Shinozaki was a resident of the State of New York.

23.    Defendant Howard Polivy ("Polivy"), a resident of Roosevelt Island, is being sued in his individual and official capacity as a member of the RIOC Board. At all times relevant to this action, Polivy was (i) acting as an agent of RIOC, a public benefit corporation of the State of New York; (ii) under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of her duties; (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff, and (iv) failed to ensure nondiscriminatory working conditions and/or ratified or condoned the conduct alleged herein. Polivy is also being sued as aider and abettor. During all relevant times Polivy was a resident of the State of New York.

24.    Defendant Margaret Smith ("Smith"), a resident of Roosevelt Island, is being sued in her individual and official capacity as a member of the RIOC Board. At all times relevant to this action, Smith was (i) acting as an agent of RIOC, a public benefit corporation of the State of New York; (ii) under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of her duties; (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff, and (iv) failed to ensure nondiscriminatory working conditions and/or ratified or condoned the conduct alleged herein. Smith is also being sued as aider and abettor. During all relevant times Smith was a resident of the State of New York.

25. Defendant David Kraut ("Kraut"), a resident of Roosevelt Island, is being sued in his individual and official capacity as a member of the RIOC Board. At all times relevant to this action, Kraut was (i) acting as an agent of RIOC, a public benefit corporation of the State of New York; (ii) under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of his duties; (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff, and (iv) failed to ensure nondiscriminatory working conditions and/or ratified or condoned the conduct alleged herein. Kraut is also being sued as aider and abettor. During all relevant times Kraut was a resident of the State of New York.

26. Defendant Dr. Katherine Teets Grimm ("Grimm"), a resident of Roosevelt Island, is being sued in her individual and official capacity as a member of the RIOC Board. At all times relevant to this action, Grimm was (i) acting as an agent of RIOC, a public benefit corporation of the State of New York; (ii) under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of her duties; (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff, and (iv) failed to ensure nondiscriminatory working conditions and/or ratified or condoned the conduct alleged herein. Grimm is also being sued as aider and abettor. During all relevant times Grimm was a resident of the State of New York.

27. Defendant Fay Freyer Christian ("Christian"), a resident of Roosevelt Island, is being sued in her individual and official capacity as a member of the RIOC Board. At all times relevant to this action, Christian was (i) acting as an agent of RIOC, a public benefit corporation of the State of New York; (ii) under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of her duties; (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff, and (iv) failed to ensure nondiscriminatory working conditions and/or ratified or condoned the conduct alleged herein. Christian is also being sued as aider and abettor. During all relevant times Christian was a resident of the State of New York.

28.     These six individuals collectively and referred to in this Complaint as the "Resident Directors)"

## V.     EX-OFFICER DIRECTOR DEFENDANTS

29.     Defendant Darryl Town ('Towns") is being sued in his individual and official capacity as a member of the RIOC Board. At all times relevant to this action, Towns served as Chairman of the Board through his position as Commissioner of the New York State Division of Housing and Community Renewal and was (i) acting as an agent of RIOC, a municipal agency of for the State of New York; (ii) under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of his duties; (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff, and (iv) failed to ensure nondiscriminatory working conditions and/or ratified or condoned the conduct alleged herein. Towns is also being sued as aider and abettor. During all relevant times Towns was a resident of the State of New York.

30.     Defendant Mary Beth Labate ("Labate") is being sued in her individual and official capacity as a member of the RIOC Board. From around February 2015 through at least Plaintiff's termination, Labate served on the Board through her position as New York State Director of Budget and was (i) acting as an agent of RIOC, a municipal agency of for the State of New York; (ii) under the color of the laws, statutes, ordinances, regulations, policies, customs, and/or usages of RIOC and the State of New York and within the scope of her duties; (iii) actively and directly participated in the unlawful discriminatory and retaliatory conduct directed against Plaintiff, and (iv) failed to ensure nondiscriminatory working conditions and/or ratified or condoned the conduct alleged herein. Labate is also being sued as aider and abettor. During all relevant times Labate was a resident of the State of New York.

30.     These ex-officio Defendant Directors, collectively with the Resident Directors, are referred to in this Complaint as the "Director Defendants."

31.     The Director Defendants, collectively with Defendants Indelicato, Walton and McDade are referred to in this Complaint as the "Individual Defendants."

33. At all relevant times, Defendants' conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known.

## FACTUAL ALLEGATIONS

34. Plaintiff is a 36-year old Black male and was employed at RIOC from August 23, 2006 through December 4, 2015 as Paralegal Temp/Purchasing Assistant/Inventory Clerk. From August 2006 though December 2006 Plaintiff was a consultant for RIOC. December 16, 2006 through December 4, 2015 was a RIOC New York State employee. In September 2011 Plaintiff became a consultant again for RIOC, running the Young Adult Youth Program on Friday and Saturday nights.

35. Throughout Plaintiff's tenure at RIOC, Plaintiff never received a negative performance evaluation

36. Plaintiff was approached in the mid-to later of 2007 by Carla Van de Walle the Chief Financial Officer for RIOC. Ms. Van Walle asked Plaintiff about an opportunity in the Legal Department as a Paralegal. Plaintiff also spoke with Assistant General Counsel for RIOC and General Counsel for RIOC about details. Plaintiff spoke with Ms. McDade Director of Human Resources about desired salary, Director of Human Resources told Plaintiff she would get back to him. Shortly after a (black) (woman) Paralegal was hired Edith Mayfield. Ms. Mayfield worked for RIOC as Paralegal for a few months and was terminated. Ms. Mayfield filled charges of racial discrimination against RIOC and a settlement was reached.

37. A few RIOC Directors who visited "The Young Adult Young Program" (program designed for island residents) made glowing comments about Plaintiff's work with the young adults and the program.

38. Notwithstanding his commendable record and performance, Plaintiff unfortunately was not a member of the favored demographic at RIOC under Defendant Indelicato. Mr. Maragh is Black and a male, the precise type of characteristics Defendant Indelicato disfavored and tried to excise from the RIOC Main Office where she was located.

38. Indeed, under Defendant Indelicato's reign, with Indelicato as President and CEO clearly leading the way, with the assistance of Human Resources Director McDade, and the support and/or sign off of the Board of Directors, repeated steps were taken to surround Indelicato with White women. Illustratively, during this time period:

> (i)  Defendants hired only women to work in the RIOC Main Office;
> (ii)  Nearly the entirety of those hires were White;
> (iii)  Defendants terminated all of the Black males who were employed in the RIOC Main Office at the inception of Defendant Indelicato's tenure;
> (iv)  Defendants replaced Plaintiff with a Guyanese female;
> (v)  Defendants filled the CFO executive position with another White female of similar age to Defendant Indelicato;
> (vi)  Defendants replaced Plaintiff with another White female of similar age to Defendant Indelicato; and
> (vii)  Defendants systematically converted the RIOC Executive positions that prior to Defendant Indelicato's tenure was comprised of a diverse and representative mix of    individuals -- a Hispanic female, a Black male, a White male and a Hispanic male of varying ages to all White females substantially close in age to Defendant Indelicato.

NOTE***   The Main Office at RIOC is located at 591 Main Street and is where RIOC executive offices are located (the "Main Office"). The executives do substantially all of their work in the Main Office. Although RIOC employs far greater than 20 employees, the Main Office hosts approximately 20 of those employees primarily in the legal, fiscal, information technology and human resources departments. Because of the relatively small size of the Main Office, there is a great deal of daily interaction between those employees. The other departments at RIOC such as engineering, public safety, grounds, and maintenance have offices or work stations at different locations spread out through Roosevelt Island and those employees' daily interactions with the executives in the Main Office is *de minimus.*

39. Notwithstanding Plaintiff's dutiful service to RIOC, on Friday, December 4, 2015, Plaintiff was terminated. Termination letter claims, "After careful consideration of problems with my job performance and finding of a Public Safety

Investigation Report surrounding your employment with the Roosevelt Island Operating Corporation RIOC) the decision has been made to terminate your employment with RIOC effective immediately". To be clear – after almost 15 months of being placed on Administrative Leave, September 29, 2014 through December 4, 2015 . Plaintiff was never to told who made claims against him, where claims took place, and when alleged claims took place. Plaintiff has worked at RIOC for over nine years of dedicated service and suffering under a hostile work environment under Defendant Indelicato. Defendant Indelicato maliciously acts in a blatant act of retaliation and discrimination.

40. Critically, pursuant to RIOC's By-laws, lower administrative staff New York State Employees like Plaintiff may only be removed with incident. Moreover, the powers of the RIOC President are expressly set forth in RIOC's By-laws and do not include the power to remove lower administrative staff New York State Employees without incident.

41. Defendant Indelicato flaunted the laws governing removal of a New York State Employee and terminated Plaintiff without following those requirements. Moreover, in a deceitful attempt to somehow justify her illegal and *ultra-vires* conduct, Defendant Indelicato attempted to poison the well against Plaintiff by disseminating false information to certain individuals, withholding critical information from other individuals, and acting as if there an urgent need to terminate Plaintiff, when in fact there was no need whatsoever.

43. Defendant Indelicato's  telephone call to Plaintiff on September 29, 2014 and then subsequent letter dated December 4, 2014 have not provided any reason for Plaintiff's termination.  Which has proved to be demonstrable and unequivocally  false.  Plaintiff has FOIL request documentation to his own termination and has been denied.

44. In furtherance of the ploy, Defendant Indelicato did not copy the Resident Directors on the termination email in order to hide the fact that she was falsely was attributing the decision to terminate Plaintiff to the Board.

45. Notably, in or about the second week in March Plaintiff sent an email to Defendant Indelicato's work email about "The Young Adult Youth Program". Members and parents of members for the program expressed some concerns about policy.  Staff from the program and Plaintiff had no answers to address question. Plaintiff never received a response from Defendant Indelicato, however Plaintiff was summoned to the Director of Human Relations and to the Director of Human

Resources later in the day he sent email.  Futhermore, Defendants had not relayed to Plaintiff (i) any rationale for his dismissal; (ii) any policy or practice that he was alleged to violate; or (iii) any verbal or written warnings.   An examination of the 2015-2016 Proposed Budget will reveal that all the individuals who Defendant Indelicato swayed to make false allegations against me was compensated monetarily.

46.   The false sense of urgency that Indelicato manufactured, appears to have been an attempt at avoiding review of her ultra-vires actions and the possibility that her self-serving plan would be defeated (as was alleged to have occurred in another instance when Defendant Indelicato improperly attempted to coerce a resignation behind the backs of her then supervisors in a different government position).

47.   A careful examination of the proposed budget 2015-2016 bares witness to the fact that the discrimination that Plaintiff encountered is reflected in his pay rate as well.  Plaintiff has worked for RIOC for almost 9 years and employees that have work at RIOC for far less time are making the same rate of pay as Plaintiff or exceeding it.  Thus the discrimination has impacted Plaintiff on all levels including financially.  Plaintiff has requested a review of the task and responsibilities of his position and all positions on his level at the administrative office at 591 Main Street on Roosevelt Island.  No action was taken.

48.   Simply put, Defendant Indelicato wanted to eliminate all Black males. Plaintiff – who at this point of Defendant Indelicato's reign was the only RIOC Administrative lower staff remaining who was not both White and female – and she culminated her discriminatory and abusive treatment Plaintiff, with the support of the other Defendants, by unlawfully retaliating against Plaintiff for reporting concerns about pervasive discrimination and potential wrongdoing.

49.   The RIOC Board has plainly rejected the fabrications in Defendant Indelicato's termination e-mail. Although the Board was not involved in the termination decision, they also (i) failed to supervise properly Defendant Indelicato, (ii) take any corrective action, and (iii) admitted during a public Board meeting following the termination of Plaintiff that they have failed to exercise properly their duties. Moreover, notwithstanding their knowledge of Defendant Indelicato's wrongful conduct and their agreement that there was no legitimate basis for Plaintiff's termination, the Board and the Directors failed to take corrective action.

48. Certain Directors/Board Members also have publicly expressed concern with the termination of Plaintiff and reaffirmed that they had no involvement with the decisions. For example, during the RIOC investigation with Plaintiff, Directors/Board Members looked into fundamental facts in the case and they found that discrimination was not only in Plaintiff's department, but also corporation wide.

49. After Plaintiff filed his claim of discrimination, the workplace environment became extremely hostile and isolating, for him. Very few co-workers would even speak to Plaintiff. Many co-workers outside the Finance department, mostly African American, have secretly told him that they were glad that someone finally stood up and brought what many African American employees have felt for years to the forefront. There is profound evidence of discrimination against African Americans in general and for blue-collar jobs at RIOC. The numbers don't lie.

51. The positions in the grounds and maintenance departments are composed primarily of Latinos. The positions that are filled by African Americans are mainly entry level, public safety positions. These positions have a starting salary of $31,000. The public safety positions require intense screening and training and are very difficult to fill. Unlike positions in the grounds and maintenance departments that start at $51,000, after a six month apprenticeship period. The grounds department is made up of ten (10) Latinos and one (1) African American. Human Resource has given the field supervisor, who is a Latino, the flexibility to direct the hiring process. He clearly favors hiring Latinos. In addition, many African American, island resident, who apply for the grounds and maintenance positions are first screened by the Public Safety department, to see if the applicant has had any previous issues with the department. If any negative feedback is found, the applicant is not considered for the position. This is a stigmatizing form of discrimination; accomplish through a bias screening process. Last year a young white, adult male, who had numerous infractions with Public Safety was hired by RIOC.

52. Plaintiff has expressed concerns to serval Board Member in respect to the disproportions in numbers and emailed them all. Notwithstanding their clear disagreement and inquiries to Defendant Indlicato's ultra-vires, discriminatory and

retaliatory actions, RIOC and the Directors took no corrective action and instead failed to exercise their duties properly and failed to follow RIOC's relevant established policies and practices.

54. The Resident Director's failure to properly exercise their duties and instead proceed in willful ignorance is further evidenced by their steadfast failure to accept Plaintiff's cries for assistance in such a crucial situation. Through all the correspondence discussions, Plaintiff has informed Resident Directors of all the discriminatory behavior all retaliation which RIOC was a part of. Plaintiff attempted to schedule an interview to discuss the nature of Plaintiff's Administrative Leave through the majority of the fifteen month investigation. None of the Resident Director's emailed Plaintiff back about his concerns as a New York State Employee.

55. The Plaintiff was terminated December 4, 2015, 21 days before Christmas "thrown out the door," via e-mail and certified mail, after almost nine years of service, with absolutely no notion on a reason why, without a single discussion, based on a complete fabrication investigation that Plaintiff has not seen to date, with no severance and without an opportunity to seek new employment is punitive and indicative of the malicious nature of Defendants' conduct. This is particularly true given the Plaintiff's tenure at RIOC and their willingness, more than six-months after his termination, to disseminate false information concerning Plaintiff, his competency and job preformance as a pretextual reason for his termination.

56. In March of 2014 and March of 2015, Plaintiff reported numerous concerns regarding RIOC under the reign of the self-described "dictator" Defendant Indelicato. Plaintiff reported items of public concern related to the following issues:

(1) concerns related questionable and concealed salary activity;
(2) concerns about pervasive discrimination

57. In or around mid-April of 2015, Defendant Indelicato was heard complaining about, among other things, that Plaintiff had followed up with RIOC about concerns regarding these issues, all of which involved Defendant Indelicato, Ms. Walton, Ms. McDade and Mr. Jagdharry. Few days after General Counsel for RIOC Donald Lewis was fired; (only other black male) by Defendant Indelicato through ultra-vires, discriminatory, and blatant act of retaliation.

58.    Plaintiff insist in addition to the culture of discrimination RIOC has historically; the retaliation Plaintiff received for filing his claim of racial discrimination on September 3, 2014 was worse then, the injustice of his constitutional rights as a New York State Employee.

59.    In addition, following his dismissal, certain Defendants disseminated malicious pre- textual fabrications concerning Plaintiff and his tenure at RIOC, including false statements concerning Plaintiff's performance and work habits. For example, upon information and belief, Defendant McDade, RIOC's Human Resources Director, has on multiple occasions spread outright false statements of facts on Roosevelt Island concerning the circumstances surrounding Plaintiff's dismissal. These false statements portrayed Plaintiff in a negative light.

60.    I am a 36 year old African American male and I have worked at the Roosevelt Island Operating Corporation for the past 9 years.   My current position was Inventory Clerk/Purchasing Assistant.  I have always received satisfactory or better in my yearly evaluations.  I was subjected to retaliation and discriminated against by my employer on the basis of my race, sex, and color.  I was placed on Administrative Leave and told it was for alleged threats, made to fellow employees.  These claims are false, blatant and deliberate acts of retaliation.

61.    During the nine years at RIOC, I have been subjected to numerous acts of public humiliation and harassment. These discriminatory behavior were implemented primarily but not exclusively by Nancy Zee, a fellow employee in the accounting department.  I have complained to my immediate supervisor Muneshwar Jagdharry, Comptroller, Steven Chironis, the former CFO and Claudia McDade, Director of Human Resources. I know during Mr. Chironis' tenure he had Ms. McDade speak to Ms. Zee and for a while the situation was tolerable. However, since Mr. Chironis left RIOC, the situation became intolerable, to the extent that I had no options, but to file a claim of discrimination on September 3, 2014.

62.    In addition to the behavior and actions of Ms. Zee; Mr. Jagdharry has exasperated the situation by public acts of humiliation.   On May 12, 2014, at or about 3:00 P.M. I was summed to a meeting in the conference room by my

immediate supervisor and Comptroller, Muneshwar Jagdharry. Frances Walton, the CFO and Claudia McDade, the Human Resources Director, were both present at this meeting. Muneshwar Jagdharry, Comptroller proceeded to verbally abuse and publicly humiliate me. He was yelling so loud that anyone who was on the first floor heard him. He was so out of control, that employes ran to see what was the source of this commotion. The executive staff, Charlene Indelicato, CEO, Donald Lewis, General Counsel, Lada Stasko, Paralegal, Arthur Eliav, Assistant General Counsel, as well as Erica Spencer, Community Relations and Karlene Jean Administrative Assistant. Muneshwar was so irate that I thought he was going to have a heart attack. Claudia and Frances had to tell him to calm down more than once. Muneshwar Jagdharry was attempting to psychologically castrate me in that meeting. I felt completely humiliated and disrespected. After the meeting I had to leave work early. This is the most escalated the discrimination has gotten towards me but it has been a pattern for years.

63. Muneshwar Jagdharry and Claudia McDade have all directly and indirectly created a hostile work environment for me. This hostile work environment, that I am subjected to, has taken a toll on me professionally and personally. Nancy Zee also contributes to creating a hostile work environment for me. Nancy Zee has yelled at me on numerous occasions. If Nancy is seated at a lunch table, and I sit at the same table she gets up and leaves. As a result of this behavior I don't really feel comfortable eating lunch with the staff. She invites everyone from the accounting department and others, from other departments but selectively omits inviting me, to lunch. These individuals have created a culture of discrimination; therefore RIOC has a culture of discrimination.

64. Mr. Jagdharry has subjected me to selective enforcement of company policy. Case in point, I was told that I have to physically sign-in, in his office, on his calendar; to verify my arrival at work. There are other employees who persistently come in late, that do not have to sign-in, in his office. Sean Singh, who works in the accounting department and over the years, has consistently come in late, does not sign-in, in Mr. Jagdharry's office. Sean Singh is Guyanese and the nephew of Rudy Rajaballey. Rudy Rajaballey also works in the accountant department.

65. Mr. Jagdharry has displayed extreme favoritism towards Ms. Zee to the point that she is often referred to as "Joe's girlfriend". Ms. Zee makes it a point to

flaunt her special treatment by Mr. Jagdharry.  She has been empowered within the department.   In addition, the accounting department is comprised of seven individuals, including myself, four of whom are Guyanese. Mr. Jagdharry is also Guyanese and two of the other Guyanese employees are related.  Before my forced administrative leave, I was told to train Ms. Natalie Grant, who is also Guyanese.

65.   The letter that I received from RIOC on August 14, 2014, is a defamation of my character, and as such I am offended by this memo. The tone of this memo is derogatory, disparaging, and disrespectful.  I was on my scheduled vacation and I came back to work to be greeted by this character assignation memo. This memo failed to highlight what an asset I have been to RIOC over the course of the years.

66.   On September 3, 2014 I initiated a formal complaint to Donald Lewis, General Counsel and on September 29, 2014 was placed on administrative leave.  After I filed my claim of discrimination, no one from RIOC, including Human Resources met with me to explain my rights and what safeguards are in place to protect me from retaliation. There are specific safeguards against retaliation in the Title VII of the Civil Rights Act of 1964 that were not explained to me. I was told to read the employee manual, only after I sent an email indicating that no one has meet or spoken to me about my claim of discrimination.  I know that employees who have filed prior claims of discrimination, were immediately met with and explained their rights.  This further substantiate my claim of discrimination and retaliation.

67.   In or around May 2013, the RIOC Board of Directors appointed Defendant Indelicato to her position as RIOC CEO and President. Defendant Indelicato took over the full-time Presidency at RIOC. Defendant Indelicato is a White female over 60 years old, who has described herself as "unemployable," presumably because of two prior employment discrimination lawsuits against her.   RIOC choose to hire her.

68.   The two prior employment discrimination lawsuits against Defendant Indelicato were, and should have been, a sign of things to come. A news article concerning one of the lawsuits against Defendant Indelicato is entitled "Ex-Marine

Sues' Man-Hating' W'Chester Lady Lawyers". Indeed, Ms. Defendant Indelicato, with the support of the other Defendants, has continued her discriminatory and "man-hating" behavior at RIOC.

68.    Defendant Indelicato is a high-ranking Government executive who had policy-making authority and set RIOC policies. For much of Defendant Indelicato's tenure – and through Mr. Maragh's termination and continuing thereafter – Defendant Indelicato, acted in concert with Walton and McDade (who are also high-ranking Government executives who had policy-making authority and set certain RIOC policies) and Jadgharry to undermine and discriminate against Plaintiff.

69.    The unlawful termination of Plaintiff was the final step in Defendant Indelicato's attempts to remove Plaintiff from the position of Inventory Clerk and replace him with a Guyanese woman, which began at the very inception of her tenure at RIOC. Almost immediately upon her appointment, Defendant Indelicato requested to Plaintiff supervisor Ms. Jadgharry to find a way to vacate Plaintiff's Inventory Clerk position and this would enabling Indelicato to fill Plaintiff position with a Guyanese female, which brought total of 4 of 8 in the finance department.

70.    As noted, the Main Office at RIOC is located at 591 Main Street and is where RIOC executive offices are located (the "Main Office"). The executives do substantially all of their work in the Main Office. Although RIOC employs far greater than 20 employees, the Main Office hosts approximately 20 of those employees primarily in the legal, fiscal, information technology and human resources departments. Because of the relatively small size of the Main Office, there is a great deal of interaction between those employees. The other departments at RIOC such as engineering, public safety, grounds, and maintenance have offices or work stations at different locations throughout Roosevelt Island and those employees' daily interactions with the executives in the Main Office is de minimus.

71.    Of the four Blacks employed in the Main Office when Defendant Indelicato arrived – two Black males and two Black females – all have complained about their treatment under Defendant Indelicato's reign. Moreover, the only two Black male employees have been fired. That is, 100% of the Black male employees (who were located in the Main Office when Defendant Indelicato arrived) have been

(ii)    Enabling Legislation;
(iii)   Policies Regarding Payment of Salary, Compensation and Reimbursements to Chief Executive Officer and Senior Management;
(iv)    Equal Employment Opportunity Policy Statement;
(v)     Harassment Policy Statement;
(vi)    Corrective Action Policy Statement;
(vii)   Reporting of Misconduct and Protection against Any Adverse Personnel Action Policy Statement;
(viii)  Exit Interviews;
(ix)    Fiduciary Responsibilities, as set forth in relevant ABO Guidance; and
(x)     Separate Oversight and Executive Management Functions, as set forth in ABO Guidance.

74. In addition to other damages, Plaintiff has suffered severe emotional distress (including mental and physical anguish and pain) and severe reputational harm because of the Defendants discriminatory and retaliatory termination of his employment. Defendants' termination of Plaintiff has embarrassed him and tarnished his well-earned reputation, including among the numerous colleagues in the legal community who have expressed shock and disbelief about his separation from RIOC.

## COUNT I

**RACE AND GENDER DISCRIMINATION IN VIOLATION OF CIVIL RIGHTS ACT OF 1866, 42 U.S.C.A § 1981 (ALL DEFENDANTS)**

75.   Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

76.   Defendants have intentionally discriminated against Plaintiff on the basis of his race (Black) and Gender (male) in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

77.   Defendants more favorable treatment of a similarly situated White employee, the pattern and practice of discrimination at RIOC, and Defendants acquiescence to the discriminatory conduct described herein, among other things, give rise to an inference of intentional discrimination based on Plaintiff's race and gender.

78.   Upon information and belief, the individual Defendants directed and/or participated in and/or were aware of and failed to take immediate and appropriate corrective action to prevent the discriminatory conduct alleged herein.

79.   Additionally, upon information and belief, other individuals who exercised managerial/supervisory control over Plaintiff participated in the conduct alleged herein and/or were

aware of the conduct and failed to take immediate and appropriate corrective action.

128.    Defendants' discriminatory actions, as alleged herein, constituted a continuing violation, since specific ongoing discriminatory policies or practices, and/or specific and related instances of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

129.    As a result of Defendants' actions, Plaintiff has suffered damages.

130.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## COUNT II
### DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE, 42 U.S.C § 1983 (ALL DEFENDANTS)

131.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

132.    Defendants' actions as described herein were under the color of state law.

133.    Defendants have discriminated against Plaintiff on the basis of his race (Black) in violation of the Equal Protection Clause of the United States Constitution by denying Plaintiff equal terms and conditions of employment.

134.    Defendants have discriminated against Plaintiff on the basis of his gender (male) in violation of the Equal Protection Clause of the United States Constitution by denying Plaintiff equal terms and conditions of employment.

135.    Upon information and belief, the Individual Defendants directed and/or participated in and/or were aware of the discriminatory acts alleged herein, which discriminatory acts resulted from municipal policy or custom.

136.    Additionally, the discriminatory conduct was so apparent as to create constructive acquiescence of the senior policy making officials Defendants, including the Director Defendants.

137.    Defendants' discriminatory actions, as alleged herein, constituted a continuing violation, since specific ongoing discriminatory policies or practices, and/or specific and related instances

aware of the conduct and failed to take immediate and appropriate corrective action.

80.   Defendants' discriminatory actions, as alleged herein, constituted a continuing violation, since specific ongoing discriminatory policies or practices, and/or specific and related instances of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

81.   As a result of Defendants' actions, Plaintiff has suffered damages.

82.   Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## <u>COUNT II</u>
### DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE, 42 U.S.C § 1983 (ALL DEFENDANTS)

83.   Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

84.   Defendants' actions as described herein were under the color of state law.

85.   Defendants have discriminated against Plaintiff on the basis of his race (Black) in violation of the Equal Protection Clause of the United States Constitution by denying Plaintiff equal terms and conditions of employment.

86.   Defendants have discriminated against Plaintiff on the basis of his gender (male) in violation of the Equal Protection Clause of the United States Constitution by denying Plaintiff equal terms and conditions of employment.

87.   Upon information and belief, the Individual Defendants directed and/or participated in and/or were aware of the discriminatory acts alleged herein, which discriminatory acts resulted from municipal policy or custom.

88.   Additionally, the discriminatory conduct was so apparent as to create constructive acquiescence of the senior policy making officials Defendants, including the Director Defendants.

89.   Defendants' discriminatory actions, as alleged herein, constituted a continuing violation, since specific ongoing discriminatory policies or practices, and/or specific and related instances

(ii)     Enabling Legislation;
(iii)    Policies Regarding Payment of Salary, Compensation and Reimbursements to Chief Executive Officer and Senior Management;
(iv)     Equal Employment Opportunity Policy Statement;
(v)      Harassment Policy Statement;
(vi)     Corrective Action Policy Statement;
(vii)    Reporting of Misconduct and Protection against Any Adverse Personnel Action Policy Statement;
(viii)   Exit Interviews;
(ix)     Fiduciary Responsibilities, as set forth in relevant ABO Guidance; and
(x)      Separate Oversight and Executive Management Functions, as set forth in ABO Guidance.

122.    In addition to other damages, Plaintiff has suffered severe emotional distress (including mental and physical anguish and pain) and severe reputational harm because of the Defendants discriminatory and retaliatory termination of his employment.  Defendants' termination of Plaintiff has embarrassed him and tarnished his well-earned reputation, including among the numerous colleagues in the legal community who have expressed shock and disbelief about his separation from RIOC.

## COUNT I

### RACE AND GENDER DISCRIMINATION IN VIOLATION OF CIVIL RIGHTS ACT OF 1866, 42 U.S.C.A § 1981 (ALL DEFENDANTS)

123.    Plaintiff hereby repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

124.    Defendants have intentionally discriminated against Plaintiff on the basis of his race (Black) and Gender (male) in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

125.    Defendants more favorable treatment of a similarly situated White employee, the pattern and practice of discrimination at RIOC, and Defendants acquiescence to the discriminatory conduct described herein, among other things, give rise to an inference of intentional discrimination based on Plaintiff's race and gender.

126.    Upon information and belief, the individual Defendants directed and/or participated in and/or were aware of and failed to take immediate and appropriate corrective action to prevent the discriminatory conduct alleged herein.

127.    Additionally, upon information and belief, other individuals who exercised managerial/supervisory control over Plaintiff participated in the conduct alleged herein and/or were

of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

188-90  As a result of Defendants' actions, Plaintiff has suffered damages.

189  Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1983 for which Plaintiff is entitled to an award of punitive damages.

## COUNT III
### DISCRIMINATION IN VIOLATION OF THE FIRST AMENDMENT, 42 U.S.C § 1983 (ALL DEFENDANTS)

92 140.  Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

93 141.  Under Section 1983 of Title 42 of the United States Code,

> every person who, under color of any statute, ordinance regulation, custom, or usage, or any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

94 142.  Defendants, who were exercising state governmental authority, violated Plaintiff's First Amendment Rights.  Defendants were aware of Plaintiff's actions in exercising his First Amendment rights, and as a result of his actions in that regard, Defendants, among other things, unlawfully subjected him to adverse employment actions including: discrimination, retaliation, exposure to a hostile work environment and termination.  Defendants' unlawful actions continued past Plaintiff's termination.

95 143.  The Individual Defendants directed and/or participated in and/or were aware of the wrongful acts alleged herein, which resulted from a government policy or custom, failure to implement an established policy or custom and/or failure to establish an appropriate policy or custom.

96 144.  Additionally, the wrongful conduct was so apparent as to create constructive acquiescence of the Defendant senior policy making officials, including the Director Defendants.

97 145.  Defendants' discriminatory actions, as alleged herein, constituted a continuing violation,

since specific ongoing discriminatory policies or practices, and/or specific and related instances of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

146.   As a result of Defendants' actions, Plaintiff has suffered damages.

147.   Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1983 for which Plaintiff is entitled to an award of punitive damages.

### COUNT IV [4]
### RACE AND GENDER– DISPARATE TREATMENT IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C.A §2000E ET SEQ. (AGAINST DEFENDANT RIOC)

148.   Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

149.   Plaintiff is a Black male, so he is within such protected classes of individuals.

150.   Defendants' actions as alleged herein constitute unlawful employment practices and discriminatory treatment on the basis of Plaintiff's race and gender in violation of Title VII, as amended, 42 U.S.C. §§ 2000e *et seq.*

151.   Defendants' discriminatory actions, as alleged herein, constituted a continuing violation, since specific ongoing discriminatory policies or practices, and/or specific and related instances of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

152.   As a result of Defendants' actions, has suffered damages.

153.   Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 2000e *et seq.* for which Plaintiff is entitled to an award of punitive damages.

---

[4] The U.S. Court of Appeals for the Second Circuit recently clarified, in *Littlejohn v. City of New York*, that a plaintiff at the pleading stage of a workplace discrimination and/or retaliation suit, before the employer comes forward with the claimed reason for its action, is not required to present substantial evidence of discriminatory intent; rather, "need only give plausible support to a minimal inference of discriminatory motivation." *See Littlejohn v. City of New York*, No. 14-1395-CV, 2015 WL 4604250, at *4-8 (2d Cir. Aug. 3, 2015)

since specific ongoing discriminatory policies or practices, and/or specific and related instances of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

146.  As a result of Defendants' actions, Plaintiff has suffered damages.

147.  Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1983 for which Plaintiff is entitled to an award of punitive damages.

## COUNT IV [4]
### RACE AND GENDER– DISPARATE TREATMENT IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C.A §2000E ET SEQ. (AGAINST DEFENDANT RIOC)

148.  Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

149.  Plaintiff is a Black male, so he is within such protected classes of individuals.

150.  Defendants' actions as alleged herein constitute unlawful employment practices and discriminatory treatment on the basis of Plaintiff's race and gender in violation of Title VII, as amended, 42 U.S.C. §§ 2000e *et seq.*

151.  Defendants' discriminatory actions, as alleged herein, constituted a continuing violation, since specific ongoing discriminatory policies or practices, and/or specific and related instances of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

152.  As a result of Defendants' actions, has suffered damages.

153.  Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 2000e *et seq.* for which Plaintiff is entitled to an award of punitive damages.

---

[4] The U.S. Court of Appeals for the Second Circuit recently clarified, in *Littlejohn v. City of New York*, that a plaintiff at the pleading stage of a workplace discrimination and/or retaliation suit, before the employer comes forward with the claimed reason for its action, is not required to present substantial evidence of discriminatory intent; rather, "need only give plausible support to a minimal inference of discriminatory motivation." See *Littlejohn v. City of New York*, No. 14-1395-CV, 2015 WL 4604250, at *4-8 (2d Cir. Aug. 3, 2015)

of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

138.    As a result of Defendants' actions, Plaintiff has suffered damages.

139.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1983 for which Plaintiff is entitled to an award of punitive damages.

## COUNT III
### DISCRIMINATION IN VIOLATION OF THE FIRST AMENDMENT, 42 U.S.C § 1983 (ALL DEFENDANTS)

140.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

141.    Under Section 1983 of Title 42 of the United States Code,

> every person who, under color of any statute, ordinance regulation, custom, or usage, or any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

142.    Defendants, who were exercising state governmental authority, violated Plaintiff's First Amendment Rights.  Defendants were aware of Plaintiff's actions in exercising his First Amendment rights, and as a result of his actions in that regard, Defendants, among other things, unlawfully subjected him to adverse employment actions including: discrimination, retaliation, exposure to a hostile work environment and termination.  Defendants' unlawful actions continued past Plaintiff's termination.

143.    The Individual Defendants directed and/or participated in and/or were aware of the wrongful acts alleged herein, which resulted from a government policy or custom, failure to implement an established policy or custom and/or failure to establish an appropriate policy or custom.

144.    Additionally, the wrongful conduct was so apparent as to create constructive acquiescence of the Defendant senior policy making officials, including the Director Defendants.

145.    Defendants' discriminatory actions, as alleged herein, constituted a continuing violation,

## COUNT V
**RACE AND GENDER-- HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C.A §2000E ET SEQ. (AGAINST DEFENDANT RIOC)**

154.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

155.    Plaintiff is a Black male, so he is within such protected classes of individuals.

156.    Defendants' actions as alleged herein constitute unlawful employment practices and constituted a hostile work environment on the basis of Plaintiff's race and gender in violation of Title VII, as amended, 42 U.S.C. §§ 2000e *et seq.*

157.    The hostile work-environment, as alleged herein, constituted a continuing violation, since specific ongoing policies or practices, and/or specific and related instances of the hostile work-environment were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

158.    The hostile work environment was of such severity and pervasiveness as to alter the conditions of the Plaintiff's employment and created an abusive working environment.

159.    The conduct that created the hostile work environment is imputed to Defendant RIOC and Defendant RIOC is vicariously liable for such conduct based on, *inter alia*, Individual Defendants' supervisory positions and because Defendant RIOC took no corrective action notwithstanding knowledge of the situation.

160.    As a result of Defendants' actions, has suffered damages.

161.    Defendants' unlawful actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 2000e *et seq.* for which Plaintiff is entitled to an award of punitive damages.

## COUNT VI
**RACE AND GENDER DISCRIMINATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE § 8-107 ET SEQ. (ALL DEFENDANTS)**

162.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

163.    Defendants' actions as alleged herein constitute unlawful employment practices and

discriminatory treatment on the basis of Plaintiff's race and gender in violation of the New York
City Human Rights Law, Administrative Code § 8-107 *et seq.*

164.    Defendants' discriminatory actions, as alleged herein, constituted a continuing violation,
since specific ongoing discriminatory policies or practices, and/or specific and related instances
of discrimination were permitted by Defendants' to continue unremedied for so long as to
amount to a discriminatory policy or practice.

165.    Defendants' unlawful actions were willful, wanton, reckless, and malicious, and further
show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right
under the New York City Human Rights Law.  Therefore, Plaintiff is entitled to an award of
punitive or exemplary damages under the liberal and expansive provisions in the New York City
Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others
from like conduct in the future.

166.    As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be
determined at trial.

**COUNT VII**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS**
**LAW, ADMINISTRATIVE CODE § 8-107 ET SEQ. (ALL DEFENDANTS)**

167.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

168.    Section 8-107(1)(a) of NYCHRL makes it unlawful "for an employer or an employee or
agent thereof" to create a hostile work environment. N.Y.C. Admin. Code § 8-107(1)(a).
Defendants' actions as alleged herein constitute unlawful employment practices and a hostile
work environment on the basis of Plaintiff's race and gender in violation of the New York City
Human Rights Law, Administrative Code § 8-107 *et seq.*

169.    Defendants' creation of a hostile work environment, as alleged herein, constituted a
continuing violation, since specific ongoing hostile work environment policies or practices,
and/or specific and related instances of a hostile work environment were permitted by
Defendants' to continue unremedied for so long as to amount to a policy or practice permitting a
hostile work environment.

170.    Defendants' unlawful actions were willful, wanton, reckless, and malicious, and further

discriminatory treatment on the basis of Plaintiff's race and gender in violation of the New York City Human Rights Law, Administrative Code § 8-107 *et seq.*

164.    Defendants' discriminatory actions, as alleged herein, constituted a continuing violation, since specific ongoing discriminatory policies or practices, and/or specific and related instances of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

165.    Defendants' unlawful actions were willful, wanton, reckless, and malicious, and further show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right under the New York City Human Rights Law.  Therefore, Plaintiff is entitled to an award of punitive or exemplary damages under the liberal and expansive provisions in the New York City Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others from like conduct in the future.

166.    As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT VII**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE § 8-107 ET SEQ. (ALL DEFENDANTS)**

167.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

168.    Section 8-107(1)(a) of NYCHRL makes it unlawful "for an employer or an employee or agent thereof" to create a hostile work environment. N.Y.C. Admin. Code § 8–107(1)(a). Defendants' actions as alleged herein constitute unlawful employment practices and a hostile work environment on the basis of Plaintiff's race and gender in violation of the New York City Human Rights Law, Administrative Code § 8-107 *et seq.*

169.    Defendants' creation of a hostile work environment, as alleged herein, constituted a continuing violation, since specific ongoing hostile work environment policies or practices, and/or specific and related instances of a hostile work environment were permitted by Defendants' to continue unremedied for so long as to amount to a policy or practice permitting a hostile work environment.

170.    Defendants' unlawful actions were willful, wanton, reckless, and malicious, and further

34

## COUNT V

### RACE AND GENDER– HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C.A §2000E ET SEQ. (AGAINST DEFENDANT RIOC)

154.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

155.    Plaintiff is a Black male, so he is within such protected classes of individuals.

156.    Defendants' actions as alleged herein constitute unlawful employment practices and constituted a hostile work environment on the basis of Plaintiff's race and gender in violation of Title VII, as amended, 42 U.S.C. §§ 2000e *et seq.*

157.    The hostile work-environment, as alleged herein, constituted a continuing violation, since specific ongoing policies or practices, and/or specific and related instances of the hostile work-environment were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

158.    The hostile work environment was of such severity and pervasiveness as to alter the conditions of the Plaintiff's employment and created an abusive working environment.

159.    The conduct that created the hostile work environment is imputed to Defendant RIOC and Defendant RIOC is vicariously liable for such conduct based on, *inter alia*, Individual Defendants' supervisory positions and because Defendant RIOC took no corrective action notwithstanding knowledge of the situation.

160.    As a result of Defendants' actions, has suffered damages.

161.    Defendants' unlawful actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 2000e *et seq.* for which Plaintiff is entitled to an award of punitive damages.

## COUNT VI

### RACE AND GENDER DISCRIMINATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE § 8-107 ET SEQ. (ALL DEFENDANTS)

162.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

163.    Defendants' actions as alleged herein constitute unlawful employment practices and

## COUNT IX
**AIDING AND ABETTING RACE AND GENDER DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE § 8-107 ET SEQ. (ALL DEFENDANTS EXCEPT DEFENDANT RIOC)**

177.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

178.    Title 8 of NYCHRL imposes liability on a defendant for aiding and abetting, discrimination, aiding and abetting creation of a hostile work environment and aiding and abetting retaliation.  Defendants' actions as alleged herein constitute unlawful employment practices and aiding and abetting discriminatory treatment on the basis of Plaintiff's race and gender, creation of a hostile work environment and retaliation in violation of the New York City Human Rights Law, Administrative Code § 8-107 *et seq.*

179.    Defendants' actions in aiding and abetting discrimination, aiding and abetting creation of a hostile work environment, and aiding and abetting retaliation, as alleged herein, constituted a continuing violation, since specific ongoing policies or practices, and/or specific and related instances were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

180.    Defendants' unlawful actions were willful, wanton, reckless, and malicious, and further show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right under the New York City Human Rights Law.  Therefore, Plaintiff is entitled to an award of punitive or exemplary damages under the liberal and expansive provisions in the New York City Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others from like conduct in the future.

181.    As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

182.    The Individual Defendants aided and abetted the discriminatory practices and acts alleged herein.

## COUNT X
**RACE AND GENDER DISPARATE TREATMENT IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW § 290 ET SEQ. (ALL DEFENDANTS)**

183.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth

36

show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right under the New York City Human Rights Law. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages under the liberal and expansive provisions in the New York City Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others from like conduct in the future.

171.   As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT VIII**

**RETALIATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE § 8-107 ET SEQ. (ALL DEFENDANTS)**

172.   Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

173.   Defendants' actions as alleged herein constitute unlawful employment practices and retaliation on the basis of Plaintiff participating in a protected activity, in among other things, reporting discrimination and potential misconduct in violation of the New York City Human Rights Law, Administrative Code § 8-107 *et seq.* Defendants' conduct is reasonably likely to deter a person from engaging in protected activity.

174.   Defendants' retaliatory actions, as alleged herein, constituted a continuing violation, since specific ongoing retaliatory policies or practices, and/or specific and related instances of retaliation were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

175.   Defendants' unlawful actions were willful, wanton, reckless, and malicious, and further show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right under the New York City Human Rights Law. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages under the liberal and expansive provisions in the New York City Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others from like conduct in the future.

176.   As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right under the New York City Human Rights Law. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages under the liberal and expansive provisions in the New York City Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others from like conduct in the future.

171.    As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT VIII
### RETALIATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE § 8-107 ET SEQ. (ALL DEFENDANTS)

172.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

173.    Defendants' actions as alleged herein constitute unlawful employment practices and retaliation on the basis of Plaintiff participating in a protected activity, in among other things, reporting discrimination and potential misconduct in violation of the New York City Human Rights Law, Administrative Code § 8-107 *et seq.* Defendants' conduct is reasonably likely to deter a person from engaging in protected activity.

174.    Defendants' retaliatory actions, as alleged herein, constituted a continuing violation, since specific ongoing retaliatory policies or practices, and/or specific and related instances of retaliation were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

175.    Defendants' unlawful actions were willful, wanton, reckless, and malicious, and further show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right under the New York City Human Rights Law. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages under the liberal and expansive provisions in the New York City Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others from like conduct in the future.

176.    As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT IX
### AIDING AND ABETTING RACE AND GENDER DISCRIMINATION, HOSTILE WORK ENVIRONMENT AND RETALIATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE § 8-107 ET SEQ. (ALL DEFENDANTS EXCEPT DEFENDANT RIOC)

177.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

178.    Title 8 of NYCHRL imposes liability on a defendant for aiding and abetting, discrimination, aiding and abetting creation of a hostile work environment and aiding and abetting retaliation.  Defendants' actions as alleged herein constitute unlawful employment practices and aiding and abetting discriminatory treatment on the basis of Plaintiff's race and gender, creation of a hostile work environment and retaliation in violation of the New York City Human Rights Law, Administrative Code § 8-107 *et seq.*

179.    Defendants' actions in aiding and abetting discrimination, aiding and abetting creation of a hostile work environment, and aiding and abetting retaliation, as alleged herein, constituted a continuing violation, since specific ongoing policies or practices, and/or specific and related instances were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

180.    Defendants' unlawful actions were willful, wanton, reckless, and malicious, and further show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right under the New York City Human Rights Law.  Therefore, Plaintiff is entitled to an award of punitive or exemplary damages under the liberal and expansive provisions in the New York City Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others from like conduct in the future.

181.    As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

182.    The Individual Defendants aided and abetted the discriminatory practices and acts alleged herein.

## COUNT X
### RACE AND GENDER DISPARATE TREATMENT IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW § 290 ET SEQ. (ALL DEFENDANTS)

183.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth

herein.

184.    Defendants' actions as alleged herein constitute unlawful employment practices and discriminatory treatment on the basis of Plaintiff's race in violation of the New York State Human Rights Law, Executive Law § 296 *et seq.*

185.    Defendants' actions as alleged herein constitute unlawful employment practices and discriminatory treatment on the basis of Plaintiff's gender in violation of the New York State Human Rights Law, Executive Law § 296 *et seq.*

186.    Defendants' discriminatory actions, as alleged herein, constituted a continuing violation, since specific ongoing discriminatory policies or practices, and/or specific and related instances of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

187.    Upon information and belief, the Individual Defendants aided and abetted the discriminatory practices and acts alleged herein.

188.    As a result of Defendants' actions, Plaintiff has suffered damages.

## COUNT XI
### RETALIATION IN VIOLATION OF 42 U.S.C. § 1983 (ALL DEFENDANTS)

189.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

190.    Defendants retaliated against Plaintiff for reporting Defendants' discriminatory employment practices and wrongful conduct, including potentially unauthorized salary increases in violation of 42 U.S.C. § 1983. Plaintiff speech was not within his duties and the conduct complained of was a matter of public concern.  Plaintiff's aforementioned reporting was a protected activity.

191.    Defendants' conduct set forth above were the types of acts, which were reasonably likely to deter Plaintiff and other employees from engaging protected activity.

192.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1983 for which Plaintiff is entitled to an award of punitive damages.

193.    AS a direct result of Plaintiff speech, Defendants' subjected Plaintiff to adverse employment action, including further discrimination, termination and post-termination adverse actions.

194.    As a result of Defendants' actions, Plaintiff has suffered damages.

### COUNTS XII
### RETALIATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, EXECUTIVE LAW § 296 AND § 8-101 OF THE NEW YORK CITY ADMINISTRATIVE CODE (ALL DEFENDANTS)

195.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

196.    Defendants have retaliated against Plaintiff for opposing Defendants' discriminatory employment practices and wrongful conduct in violation of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, Executive Law § 296 and § 8-101 of the New York City Administrative Code.

197.    Defendants' conduct set forth above were the types of acts, which were reasonably likely to deter Plaintiff and other employees from engaging protected activity.

198.    Defendants unlawful retaliatory actions were willful, wanton, reckless, and malicious, and further show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right under the New York City Human Rights Law.  Therefore, Plaintiff is entitled to an award of punitive or exemplary damages under the liberal and expansive provisions in the New York City Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others from like conduct in the future.

199.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1983 for which Plaintiff is entitled to an award of punitive damages.

200.    As a result of Defendants' actions, Plaintiff has suffered damages.

### COUNT XIII
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING (RIOC AND DIRECTOR DEFENDANTS)

201.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

herein.

184.    Defendants' actions as alleged herein constitute unlawful employment practices and discriminatory treatment on the basis of Plaintiff's race in violation of the New York State Human Rights Law, Executive Law § 296 *et seq*.

185.    Defendants' actions as alleged herein constitute unlawful employment practices and discriminatory treatment on the basis of Plaintiff's gender in violation of the New York State Human Rights Law, Executive Law § 296 *et seq*.

186.    Defendants' discriminatory actions, as alleged herein, constituted a continuing violation, since specific ongoing discriminatory policies or practices, and/or specific and related instances of discrimination were permitted by Defendants' to continue unremedied for so long as to amount to a discriminatory policy or practice.

187.    Upon information and belief, the Individual Defendants aided and abetted the discriminatory practices and acts alleged herein.

188.    As a result of Defendants' actions, Plaintiff has suffered damages.

## COUNT XI
### RETALIATION IN VIOLATION OF 42 U.S.C. § 1983 (ALL DEFENDANTS)

189.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

190.    Defendants retaliated against Plaintiff for reporting Defendants' discriminatory employment practices and wrongful conduct, including potentially unauthorized salary increases in violation of 42 U.S.C. § 1983. Plaintiff speech was not within his duties and the conduct complained of was a matter of public concern.  Plaintiff's aforementioned reporting was a protected activity.

191.    Defendants' conduct set forth above were the types of acts, which were reasonably likely to deter Plaintiff and other employees from engaging protected activity.

192.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1983 for which Plaintiff is entitled to an award of punitive damages.

37

193.    AS a direct result of Plaintiff speech, Defendants' subjected Plaintiff to adverse employment action, including further discrimination, termination and post-termination adverse actions.

194.    As a result of Defendants' actions, Plaintiff has suffered damages.

## COUNTS XII
### RETALIATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, EXECUTIVE LAW § 296 AND § 8-101 OF THE NEW YORK CITY ADMINISTRATIVE CODE (ALL DEFENDANTS)

195.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

196.    Defendants have retaliated against Plaintiff for opposing Defendants' discriminatory employment practices and wrongful conduct in violation of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, Executive Law § 296 and § 8-101 of the New York City Administrative Code.

197.    Defendants' conduct set forth above were the types of acts, which were reasonably likely to deter Plaintiff and other employees from engaging protected activity.

198.    Defendants unlawful retaliatory actions were willful, wanton, reckless, and malicious, and further show a compete and deliberate indifference to, and conscious disregard for, Plaintiff's right under the New York City Human Rights Law.  Therefore, Plaintiff is entitled to an award of punitive or exemplary damages under the liberal and expansive provisions in the New York City Human Rights Law in an amount sufficient to punish Defendants and/or deter them and others from like conduct in the future.

199.    Defendants' unlawful retaliatory actions constitute malicious, willful and wanton conduct, undertaken in reckless indifference to Plaintiff's federally protected rights under Section 1983 for which Plaintiff is entitled to an award of punitive damages.

200.    As a result of Defendants' actions, Plaintiff has suffered damages.

## COUNT XIII
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING (RIOC AND DIRECTOR DEFENDANTS)

201.    Plaintiff hereby repeats and re-alleges each and every allegation above as if fully set forth herein.

terminated. And 100% of the Black employees (who were located in the Main Office when Defendant Indelicato arrived) have complained about their treatment.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury.

DATED: September 27, 20116

New York , New York

**By:_____**
**Othniel Maragh**
**439 E 3rd Street**
**Mount Vernon, NY 10553**



Exhibit A

U.S. Depai _went of Justice
Civil Rights Division

CERTIFIED MAIL
7010 0290 0000 2017 1206

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room*
*4239 Washington, DC 20530*

April 13, 2016

Mr. Donald Lewis
c/o Anthony J. Rotondi, Esquire
Rotondi Law
5 Columbus Circle
Suite 800
New York, NY 10019

Re: EEOC Charge Against Roosevelt Island Operating Corp.
  No. 520201503449

Dear Mr. Lewis:

  Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

  If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

  The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

  This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                              Vanita Gupta
                    Principal Deputy Assistant Attorney
                        General i it Rights Division

                    by            C
                         Karen L. Ferguson
                      Supervisory Civil Rights Analyst
                       Employment Litigation Section

cc: New York District Office, EEOC
    Roosevelt Island Operating Corp.