UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
OTHNIEL EVANS MARAGH, :
:
Plaintiff, : 16-CV-7530 (JMF)
:
-v- : OPINION AND ORDER
:
THE ROOSEVELT ISLAND OPERATING :
CORPORATION, et al., :
:
Defendants. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Othniel Evans Maragh brings a potpourri of claims against his former employer, the Roosevelt Island Operating Corporation ("RIOC"), and former co-workers, including claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendants move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss Maragh's claims. *See* Docket Nos. 60 and 79. For the reasons stated below, their motions are granted in part and denied in part, and all of Maragh's claims, other than his discrimination and hostile work environment claims, are dismissed.

## BACKGROUND

The following facts, taken from the Second Amended Complaint, are assumed to be true for the purposes of this motion. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001). Maragh, who is a black man, was a full-time employee of the RIOC from 2006 to 2015. *See* Docket No. 53 ("SAC"), ¶¶ 2, 24-26, 45. Maragh began as a temporary paralegal in August 2006, accepted a fulltime role as a Purchasing Assistant a few months later, and was promoted to

Inventory Clerk in 2011. *See id.* ¶¶ 25-27. Additionally, in September 2011, RIOC officials approached Maragh and asked him to run a Young Adult Youth Program ("YAYP"), designed to provide a weekend night athletic program for Roosevelt Island youth, the vast majority of whom were "low-income Black and Latino males." *See id.* ¶¶ 35, 38. Maragh grew YAYP into a success and was compensated extra for his YAYP role. *See id.* ¶¶ 36-37.

Generally speaking, Maragh alleges that, during the course of his employment at RIOC, he faced discrimination and a hostile work environment because he is a black man. He claims that this maltreatment manifested in various ways, including several of his coworkers' using racial slurs in reference to him. *See id.* ¶¶ 32-34. Additionally, in March 2014, after approximately two and half years running YAYP, Maragh learned of a "newly imposed facility fee" for participants, and he wrote to the Chief Executive Officer of RIOC to express his concerns about the fee. That same month, Maragh received his first ever "written warning about his work performance and punctuality." *See id.* ¶¶ 38-41. Maragh alleges that this warning constituted retaliation; additionally, he made an internal complaint about race discrimination in September of 2014. *See id.* ¶¶ 39, 42. After meeting with RIOC's general counsel two days later, Maragh filed with the New York State Department of Labor ("NYSDOL") a charge against RIOC and Defendants Charlene Indelicato and Claudia McDade. *See id.* ¶ 43. Maragh alleges that, later that month, he was suspended from his job without notice or justification and, ultimately, was formally terminated on December 4, 2015. *See id.* ¶¶ 44-45.

In what can only be described as a "kitchen-sink" approach to pleading, Maragh brings a raft of claims against RIOC and seven former colleagues at RIOC alleging a wide range of misbehavior against him dating as far back as 2008. *See id.* ¶¶ 46-164. More specifically, he brings discrimination and retaliation claims against Defendants under Title VII, the NYSHRL,

and the NYCHRL; discrimination claims under Title 42, United States Code, Section 1981; substantive due process and First Amendment free speech claims under Title 42, United States Code, Section 1983 and the New York State Constitution; retaliation claims under New York Labor Law ("NYLL") Section 740 and New York Civil Service Law Section 75-b; as well as common-law claims for tortious interference with contract, intentional interference with business relations, defamation, and intentional infliction of emotional distress. Defendants meet Maragh's kitchen-sink complaint with kitchen-sink motions of their own, seeking in voluminous briefing to dismiss all of Maragh's claims on a range of different grounds.

**LEGAL STANDARDS**

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Maragh's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).[1] A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*,

---

[1] Strictly speaking, Defendants' motion is brought in part pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Defs' Mem. 2, 5. As discussed below, however, that portion of Defendants' motion is uncontested, so there is no need to recite the Rule 12(b)(1) standards.

3

550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**DISCUSSION**

Defendants make dozens of arguments in support of their motions to dismiss Maragh's thirteen or so claims. Thankfully, the Court need not address them all, as Maragh either concedes or does not directly contest several points, to wit:

- that Maragh's claims against RIOC, except under Title VII, and his claims against the individual Defendants in their official capacities should be dismissed for lack of subject-matter jurisdiction under the Eleventh Amendment, *see* Docket No. 61 ("Defs' Mem."), at 3-5; Docket No. 73 ("Pl.'s Opp'n"), at 12; Docket No. 78 ("Defs' Reply"), at 3;

- that Maragh's claims under Section 740 of the NYLL should be dismissed, *see* Defs' Mem. 33-35;

- that Maragh's claims against the individual Defendants under Section 75-b of the New York City Civil Service Law should be dismissed, *see* Defs' Mem. 33; Pl's Mem. 36; and

- that punitive damages are unavailable against RIOC, as it is a public benefit corporation. *See Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 994 (S.D.N.Y. 2017); *Hargett v. Metro. Transit Auth.*, 552 F. Supp. 2d 393, 404 (S.D.N.Y. 2008); *see also* N.Y. Unconsol. Law § 6387(1).

Accordingly, Defendants' motions are granted as unopposed on those fronts. *See, e.g.*, *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citing cases) (internal quotation marks omitted)).

Defendants' remaining arguments are more notable for their number than their complexity. Accordingly, the Court will address each one only briefly.

**A. Discrimination and Hostile Work Environment Claims**

First, Defendants' motions to dismiss Maragh's Title VII discrimination and hostile work environment claims against RIOC are easily denied. Defendants argue that the former should be dismissed because Maragh does not allege "facts suggesting an inference of discriminatory

4

motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); Defs' Mem. 19-25. But Maragh's allegations — including, for example, that he was called "nigger" and other derogatory terms by co-workers, *see* SAC ¶¶ 58, 61, 65, 73-74, 95, 103, 105, that he was subjected to physical violence and other demeaning treatment, *see id.* ¶¶ 61, 67, and that he was treated differently than other, similarly situated employees not in a protected group, *see id.* ¶¶ 61, 93-94 — are plainly sufficient to sustain his "minimal burden" at this stage of the proceedings. *Littlejohn*, 795 F.3d at 311. And those same allegations are sufficient for now to sustain a hostile work environment claim. *See, e.g.*, *Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 439 (2d Cir. 1999) ("Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as 'nigger' . . . ." (quoting *Rodgers v. Western-Southern Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir. 1993)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also, e.g.*, *La Grande v. DeCrescente Distrib. Co*., 370 F. App'x 206, 210-11 (2d Cir. 2010) (reversing dismissal of a hostile work environment claim when the plaintiff was threatened physically and called a "nigger" on four occasions).

As the relevant NYSHRL and NYCHRL standards are equivalent to, or more liberal than, Title VII's standards, Maragh's claims against RIOC under state and local law survive (or would survive) as well. *See, e.g.*, *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).[2] Whether Maragh's allegations are

---

[2] The Court says "or would survive" because, strictly speaking, the Second Amended Complaint does not include a hostile work environment claim under the NYSHRL or the NYCHRL — due, according to Maragh, "to a drafting error." Docket No. 82, at 7 n.1. Given that the Second Amended Complaint does allege a hostile work environment claim (albeit only under Title VII) and claims under the NYSHRL and NYCHRL (albeit only for discrimination and retaliation), Defendants would suffer no prejudice from allowing Maragh to amend on that front.

sufficient to state claims under the those laws against the individual Defendants is a closer call, however, as his allegations with respect to some of those Defendants — particularly McDade and Zee — are somewhat thin. But drawing all reasonable inferences in Maragh's favor, as the Court must, the Court concludes that the Second Amended Complaint's allegations are sufficient to state individual aiding-and-abetting claims against the individual Defendants, substantially for the reasons set forth in Maragh's briefing. *See* Pl.'s Opp'n 24-27; Docket No. 82 ("Pl.'s Individual Def. Opp'n), at 2-8; SAC ¶¶ 46-108; *see also, e.g.*, N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6); *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004).

**B. Retaliation**

By contrast, Maragh fails to state a retaliation claim under federal, state, or local law. Maragh actually presses two separate retaliation claims. First, he alleges that he received a written warning regarding his performance and punctuality and, ultimately, was removed from the YAYP coordinator role, in response to his e-mail to Indelicato about the facility fee. SAC ¶¶ 115-19. But that claim fails because Maragh does not establish that his e-mail regarding the facility fee was "protected activity" under any of the relevant statutes. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 174 (S.D.N.Y. 2011). On top of that, a written warning alone does not constitute an "adverse employment action." *See Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (finding that "[t]o be materially adverse" and thus constitute an adverse employment action for purposes of a retaliation claim, "a change in working conditions

---

Separately, Defendants argue that Maragh's claims under state and city law should be dismissed for failure to file a notice of claim, *see* Defs' Mem. 5-8, but the "failure to file a notice of . . . claim pursuant to § 50-e does not bar" claims under the NYSHRL and NYCHRL, *Gill v. City of New York*, No. 00-cv-8332 (KNF), 2003 WL 941607, at *9 (S.D.N.Y. Mar. 10, 2003).

6

must be more disruptive than a mere inconvenience or an alteration of job responsibilities." (internal quotation marks omitted)); *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 306 (N.D.N.Y. 2013) ("Verbal and written warnings generally do not constitute adverse employment actions unless they lead to more substantial employment actions that are adverse.").

Maragh's second retaliation claim is based on the discrimination complaint that he lodged with RIOC's general counsel in September 2014. *See* Pl.'s Opp'n 22; SAC ¶¶ 125-30. Maragh alleges that, as a result of that complaint, he was put on administrative leave (due to a pending investigation of Maragh's own behavior), and ultimately terminated in December 2015. *See* SAC ¶¶ 42-45; *see id.* ¶¶ 133, 141, 154-56. It is well established, however, that administrative leave is not "adverse employment action," *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006), and the gap between Maragh's protected activity and his termination was well over a year. Given that temporal gap, and the absence of any other allegation that could support a causal connection between Maragh's internal complaint and his termination, Maragh cannot establish a retaliation claim. *See, e.g.*, *Chang v. Safe Horizon*, No. 03-CV-10100 (WHP), 2005 WL 2125660, at *9 (S.D.N.Y. Sept. 1, 2005) (finding no causal connection where the protected activity and adverse action occurred nearly a year apart), *aff'd sub nom. Chang v. Safe Horizons*, 254 F. App'x 838 (2d Cir. 2007).

C. **Section 1981**

Maragh's claims brought under Section 1981 also fail as a matter of law. In *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989), the Supreme Court held that "the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." Although some courts have held that the Civil Rights Act of 1991 overruled *Jett* and inaugurated

7

a new cause of action against state actors under Section 1981, *see, e.g.*, *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996), the Second Circuit has not adopted that approach. To the contrary, it has continued to follow *Jett*, if only in non-precedential summary orders. *See, e.g.*, *Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010) (summary order) ("[Plaintiff's] § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983."). So too have other district courts within this Circuit. *See, e.g.*, *Whaley v. City Univ. of N.Y.*, 555 F. Supp. 2d 381, 401 (S.D.N.Y. 2008) (collecting cases). Accordingly, the Court concludes that Maragh's Section 1981 claims are subsumed by his claims under Section 1983, and therefore must be dismissed.

**D. Due Process**

Next, Maragh's substantive due process claims — brought pursuant to Section 1983 — fail for two independent reasons. First, as a threshold matter, Maragh fails to establish the existence of a "constitutionally protected property interest." *Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 89 (2d Cir. 2001); *see Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). He purports to identify his "public employment" as a property interest. *See* Pl.'s Opp'n 34 (citing *Danese v. Knox*, 827 F. Supp. 185, 191 (S.D.N.Y. 1993)). But he fails to allege that his employment was anything but at will; that is, he fails to allege that, by statute, contract, or otherwise, Defendants were "barred from terminating (or not renewing) the employment relationship without cause." *Danese*, 827 F. Supp. at 191; *see Baron*, 271 F.3d at 89 (holding that "at-will employment" does not qualify as "a constitutionally protected property interest"). Second, and in any event, for a substantive due process claim to survive a motion to dismiss, "it must allege governmental conduct that is so egregious, so outrageous, that is may fairly be said to shock the contemporary conscience." *Velez v. Levy*, 401 F.3d 75, 93-94 (2d Cir. 2005)

(internal quotation marks omitted). Even drawing all reasonable inferences in Maragh's favor, however, the Court cannot say that his allegations rise to that level. Accordingly, Maragh's substantive due process claims must be and are dismissed.

## E. First Amendment

Maragh's First Amendment claims — brought pursuant to Section 1983 as well — also fall short. To allege a plausible First Amendment retaliation claim, Maragh must establish that "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (internal quotation marks omitted). As with his retaliation claims, Maragh bases his First Amendment claims on his e-mail to Indelicato regarding the YAYP facility fee and on his discrimination complaint. *See* Pl.'s Opp'n 29-33. For the reasons discussed above, however, he cannot establish the requisite causal connection between either of those acts and any adverse employment action. On top of that, he fails to establish that either act qualified as speech protected by the First Amendment. Maragh's e-mail to Indelicato about the facility fee plainly "owe[d] its existence to" his "professional responsibilities" and, thus, did not qualify for First Amendment protection. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *see Eugenio v. Walder*, No. 06-CV-4928 (CS) (GAY), 2009 WL 1904526, at *7 (S.D.N.Y. July 2, 2009). And while employment discrimination is generally "a matter inherently of public concern," *Connick v. Myers*, 461 U.S. 138, 148 n.8 (1983), Maragh's complaint was "calculated to redress personal grievances" and was not made with "a broader public purpose." *Ruotolo v. City of N.Y.*, 514

F.3d 184, 189 (2d Cir. 2008); *see Golodner v. Berliner*, 770 F.3d 196, 204 (2d Cir. 2014); *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993).[3]

**F. Tortious Interference with Contract**

Next, Maragh brings a claim of tortious interference with contract. In order to sustain such a claim, Maragh must allege: "(1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible, (4) an actual breach of the contract, and (5) damages to the plaintiff." *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 450 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). Maragh's claim fails at the first step, however, as he fails to allege the existence of a contract. Conclusory assertions aside, Maragh does not allege that he "had an employment contract . . . that provided for a fixed or definite term of employment." *Chanicka v. JetBlue Airways Corp.*, 243 F. Supp. 3d 356, 360 (E.D.N.Y. 2017). Accordingly, he is "presumed to be an at-will employee," and cannot maintain a claim for tortious interference with contract. *Id.* (noting also that the "Plaintiff was in a 'non-binding relationship' with JetBlue and her claim must be one for tortious interference with business relations rather than for interference with a contract, as there was no binding contract to be broken"); *see Baron*, 271 F.3d at 85 (stating that the "presumption [of at-will employment] can be rebutted . . . by establishing an

---

[3] Maragh also brings due process and free speech claims under the New York State Constitution. Although they would fail for much the same reasons, they are subject to dismissal on an alternative basis: State constitutional torts are unavailable where, as here, a plaintiff has an alternative (even if unsuccessful) remedy under Section 1983. *See, e.g.*, *Greene v. City of New York*, No. 08-CV-0243 (AMD) (CLP), 2017 WL 1030707, at *32 (E.D.N.Y. Mar. 15, 2017); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013).

10

'express limitation in the individual contract of employment' curtailing an employer's right to terminate at will" (quoting *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 851 (2d Cir. 1985)).

## G. Tortious Interference with Business Relations

Maragh's claim of tortious interference with business relations fares no better. To state a claim of tortious interference with business relations, a plaintiff must allege that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105 (2d Cir. 2012). Here, Maragh fails to satisfy the first element — that he had "business relations with *a third party*." *Id.* (emphasis added). The Second Amended Complaint states that his business relationship was "with RIOC." SAC ¶ 229. By definition, no tortious interference claim could lie against *RIOC*, which is manifestly not a third party to the relationship. Nor, as Maragh implicitly concedes, does the operative complaint contain allegations that the individual Defendants acted outside the scope of their employment or otherwise acted as third parties vis-à-vis RIOC. *Cf. Thompson v. Bosswick*, 855 F. Supp. 2d 67, 88 (S.D.N.Y. 2012) (observing that "[o]nly a stranger to a contract, such as a third party, can be held liable for tortious interference with the contract" with respect to claims of tortious interference with contract). Accordingly, Maragh fails to state a claim for tortious interference with business relations sufficient to survive Defendants' motion.

## H. Defamation

Next, Maragh alleges a defamation claim. To state a claim for defamation under New York law, Maragh must allege "a false statement, published without privilege or authorization to a third party, constituting fault . . . [that] either cause[s] special harm or constitute[s] defamation

per se." *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (internal quotation marks omitted). Defendants mount several challenges to Maragh's defamation claim, but the Court need look no further his failure to allege that the purported false statements were published to a third party outside of any qualified privilege. *See* Defs' Mem. 40-41. "New York affords qualified protection to defamatory 'communication[s] made by one person to another upon a subject in which both have an interest.'" *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001) (quoting *Stillman v. Ford*, 238 N.E.2d 304, 306 (N.Y. 1968)). More relevant for present purposes, "[c]ommunications by supervisors or co-workers made in connection with . . . allegations of employee misconduct . . . fall within the privilege." *Id*; *see also Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 335 n.98 (S.D.N.Y. 2010). In this case, the alleged defamation appeared "in a Public Safety Internal Investigation Report." SAC ¶¶ 238-39. As such, Maragh does not allege that any of the allegedly defamatory statements were published beyond RIOC and its employees. Nor does he plead any facts to substantiate his conclusory allegation that the statements were made with "no privilege." SAC ¶ 239. Accordingly, the claim must be and is dismissed.

## I. Intentional Infliction of Emotional Distress

Maragh's final substantive claim is for intentional infliction of emotional distress. To state such a claim, a plaintiff must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). Significantly, however, for conduct to qualify, it "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT&T Corp.*, 241 F.3d 242,

258 (2d Cir. 2001) (internal quotation marks omitted). So high is that standard, the Second Circuit has said, that intentional infliction of emotional distress is a "highly disfavored tort under New York law . . . to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (brackets and internal citations and quotation marks omitted). Needless to say, Maragh does not come close to meeting that threshold, as the allegations in the Second Amended Complaint are largely run-of-the-mill allegations of discrimination and defamation. *See id.* at 159 (noting that "some New York courts have determined that plaintiffs may not bring claims for [intentional infliction of emotional distress] when the conduct and injuries alleged give rise to a statutory claim for workplace discrimination" (collecting cases)). And even if Defendants' alleged conduct did rise to the requisite level of outrageousness, Maragh fails to plead, except in conclusory fashion, facts to support the other elements of the tort — namely, intent, causation, and severe emotional distress. *See* SAC ¶¶ 166, 244-247.

**J. Qualified Immunity and Punitive Damages**

Two final issues remain. First, Defendants argue that "all" claims against the individual Defendants in their individual capacities should be dismissed on the basis of qualified immunity. *See* Defs' Mem. 30-31. In doing so, however, they rely solely on federal law, which does not apply to claims under state law — the only species of claim against the individual Defendants that survives the motions to dismiss. New York courts do recognize the defense of qualified immunity, but Defendants waived it by not raising in their motions. And, in any event, it is inapplicable where the alleged action was "taken in bad faith or without a reasonable basis," as is alleged here. *Blouin ex rel. Estate of Pouliot v. Spitzer,* 356 F.3d 348, 364 (2d Cir. 2004); *accord Arteaga v. State*, 527 N.E.2d 1194, 1196 (N.Y. 1988). Second, Defendants seek to strike Maragh's request for punitive damages. As noted, punitive damages are unavailable against

RIOC, as it is a public benefit corporation. *See Lewis*, 246 F. Supp. 3d at 994; *Hargett v. Metro. Transit Auth.*, 552 F. Supp. 2d 393, 404 (S.D.N.Y. 2008); *see also* N.Y. Unconsol. Law § 6387(1). Maragh may not seek punitive damages against the individual Defendants under the NYSHRL either, as the statute does not provide for them. *See, e.g.*, *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101 (2d Cir. 2001). The Court, however, declines to strike Maragh's request for punitive damages under the NYCHRL at this time. *See, e.g.*, *Caravantes v. 53rd St. Partners, LLC*, No. 09-CV-7821 (RPP), 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012) (discussing circumstances in which punitive damages are available under the NYCHRL).

## CONCLUSION

In sum, Defendants' motions are granted in part and denied in part. Specifically, for the reasons discussed above, all of Maragh's claims are dismissed, except for his discrimination and hostile work environment claims under Title VII (against RIOC) and under the NYSHRL and NYCHRL (against RIOC and the individual Defendants in their individual capacities). Further, Maragh may not seek punitive damages except against the individual Defendants under the NYCHRL. Nor will the Court grant Maragh leave *sua sponte* to amend his complaint, yet again, to address the deficiencies in those claims. *See, e.g.*, *Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*, 821 F.3d 349, 351-52 (per curiam) (2d Cir. 2016) (holding that it was not an abuse of discretion to deny the plaintiff an opportunity to amend its complaint where it "did not ask the district court for leave to amend"). Among other things, most of the problems with Maragha's claims are substantive, so amendment would be futile. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Additionally, Maragh was already granted leave to amend his complaint to cure deficiencies raised in Defendants' first motion to dismiss and was explicitly

14

cautioned that he "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." Docket No. 48.

Unless and until the Court orders otherwise, Maragh shall file a third amended complaint adding a hostile work environment claim under the NYSHRL and NYCHRL **within one week** of this Opinion and Order. (As long as he is amending, Maragh should remove all of the claims that the Court has dismissed — but may not otherwise make any substantive changes to the complaint without obtaining consent from Defendants or leave from the Court.) Defendants shall file an answer to the third amended complaint **within three weeks** of its filing.

The Clerk of Court is directed to terminate Docket No. 60.

SO ORDERED.

Date: December 12, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge