UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

OTHNIEL EVANS MARAGH,

                                          Plaintiff,

        -against-

ROOSEVELT        ISLAND        OPERATING
CORPORATION;      CHARLENE      INDELICATO;
CLAUDIA McDADE; MUNESHWAR JAGDHARRY;
JOHN   McMANUS;   RUDOLPH   RAJABALLEY;
SEAN SINGH; STEVEN FRIEDMAN; NANCY ZEE;
and "JOHN and/or JANE DOES" 1, 2, 3, etc.

                                          Defendants.
-----------------------------------------------------------------------X

**THIRD AMENDED AND
SUPPLEMENTAL
COMPLAINT**

**JURY TRIAL
DEMANDED**

16-cv-7530-JMF

        Plaintiff OTHNIEL MARAGH, by his attorneys, Beldock Levine & Hoffman LLP, as and

for his third amended and supplemental complaint against the defendants alleges as follows:

## PRELIMINARY STATEMENT

        1.      This is an action seeking redress for defendants' race discrimination, hostile work

environment, and/or bias under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended

by the Equal Employment Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C.

§2000-e *et seq.*, New York State Human Rights Law ("State Human Rights Law"), N.Y. Exec.

Law §290 *et seq.*, and the New York City Human Rights Law ("City Human Rights Law"), 1 New

York City Administrative Code 8-101 *et seq.* of the New York City Administrative Code.

        2.      Plaintiff worked at the Roosevelt Island Operating Corporation ("RIOC") from

2006 through 2015. During this time, he was subjected to discrimination, disparate treatment, and

a hostile work environment because of his race and gender. After plaintiff sent an email to RIOC's

CEO and President questioning a facility fee that almost exclusively affected young males of color

participating in athletic activities, plaintiff's supervisors created a pretextual reason to terminate

his employment. After several months of disparate treatment and being held to a higher standard

than his white and Guyanese-Indian coworkers, plaintiff, the only Black male in his department, filed a race discrimination claim against RIOC and several of the named defendants. Approximately three weeks later, plaintiff was suspended from his employment pending an investigation into false claims levied against him. Following a fifteen month investigation, plaintiff was terminated from his employment at RIOC.

3.        Plaintiff seeks redress for injuries he suffered when he was maliciously, recklessly, shockingly, outrageously, and unlawfully discriminated and retaliated against because of his race and gender and eventually wrongfully terminated.  Plaintiff seeks: (i) compensatory damages for lost pay and benefits, including without limitation, back pay, front pay, severance pay, medical and retirement benefits, as well as other monetary loss caused by the unlawful actions of the defendants; (ii) damages for emotional and physical distress; (iii) punitive damages to deter such intentional or reckless conduct; (iv) reinstatement; and (v) such other and further relief as this Court deems equitable and just.

## JURISDICTION

4.        Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 1343 (a)(3) and (4), as this action seeks redress for the violation of Plaintiffs' civil rights.

5.        Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law and city administrative law claims that are so related to the federal claims that they form part of the same case or controversy.

6.        A copy of this amended and supplemental complaint will be served upon the New York City Commission on Human Rights pursuant to Section 8-502(c) of the New York City Administrative Code.

## VENUE

7.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiff's claims took place.

## JURY DEMAND

8.     Plaintiff demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## THE PARTIES

9.     Plaintiff Othniel Maragh is a Black male and a citizen of the United States and the State of New York. At all times relevant to this complaint plaintiff was a resident of Elmont and County of Nassau. Plaintiff was employed by RIOC from approximately August 2006 through December 4, 2015.

10.     Defendant Roosevelt Island Operating Corporation ("RIOC") is a public benefit corporation created by the State of New York under Chapter 196 of the New York State unconsolidated laws to carry out the operation, maintenance, and development of Roosevelt Island. At all times relevant hereto, RIOC was a public employer and state actor located in the City of New York.

11.     Defendant Charlene Indelicato was RIOC's President and Chief Executive Officer from approximately May 2013 through March 2016.

12.     Defendant Claudia McDade is RIOC's Director of Human Resources. Upon information and belief, she commenced this employment in or about 2007.

13.     Defendant John McManus is RIOC's Director of Public Safety ("PSD"). Upon information and belief, he commenced this employment in or about January 2013.

14.     Defendant Muneswar Jagdharry is RIOC's Comptroller. Upon information and belief, he commenced this employment in or about 2008.

3

15.     Defendant Rudolph Rajaballey is RIOC's Purchasing Manager. Upon information and belief, he commenced this employment in or about 2000.

16.     Defendant Sean Singh is RIOC's assistant to the purchasing manager and grant writer. Upon information and belief, he commenced this employment in or about 2009.

17.     Defendant Steven Friedman is RIOC's accounts payable clerk. Upon information and belief, he commenced this employment in or about 2000.

18.     Defendant Nancy Zee is RIOC's Staff Accountant. Upon information and belief, she commenced this employment in or about 2006.

19.     At all times relevant to the allegations in this complaint, defendants Indelicato, McDade, Jagdharry, Rajaballey, Singh, Friedman, and Zee violated clearly established rights and standards under the First and Fourteenth Amendments to the United States Constitution, which a reasonable public employee in their circumstances would have known.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION FILING

20.     Plaintiff filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC"), charge number 520-2015-0071.

21.     The EEOC granted plaintiff a notice of right to sue on June 27, 2016.

22.     This action was timely commenced within 90 days of issuance by the EEOC's notice of the right to sue.

## STATEMENT OF FACTS

### *Background*

23.     Plaintiff is a college graduate, a father, and a lifelong resident of the State of New York.

24.     As a Black male, plaintiff is a member of protected classes pursuant to Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

25.     In August 2006, plaintiff began working at RIOC as a paralegal and temporary employee.

26.     In December 2006, RIOC made and plaintiff accepted a fulltime employment offer from RIOC as a Purchasing Assistant.

27.     In or about 2011, plaintiff received a promotion. Inventory Clerk was added to his title.

28.     During his employment with RIOC, plaintiff received two performance based salary increases in addition to annual cost of living salary increases. Performance based salary increases were only available during two years of plaintiff's employment at RIOC due to a statewide pay freeze.

29.     Throughout plaintiff's employment at RIOC, he received an annual performance evaluation and received satisfactory or above assessments.

30.     Plaintiff's education and work performance demonstrate that he was qualified for his employment at RIOC.

31.     Plaintiff worked continuously at RIOC from August 2006 through September 2014, when, without cause or other lawful justification, plaintiff was suspended from his employment.

32.     While plaintiff was employed at RIOC, he faced racial discrimination, gender discrimination, and a hostile work environment because he is a black male.

33.     Several of plaintiff's coworkers, including defendants Rajaballey, Singh, and Friedman, called him a "nigger."

34.     Plaintiff was also subjected to other comments and acts by his supervisors and coworkers giving rise to a hostile work environment because he is a Black male.

35.     In September 2011, plaintiff was asked by RIOC senior officials, including Leslie Torres, RIOC's former President, to operate a Young Adult Youth Program ("YAYP") on Friday

and Saturday nights. YAYP was created to provide an environment for Roosevelt Island youth to participate in athletic activities.

36.    Plaintiff worked as a consultant for all YAYP activities and was compensated for his work independently of his fulltime employment at RIOC.

37.    In the three years that plaintiff ran YAYP, the program grew from serving approximately 15 participants to serving approximately 50 participants.

38.    In March 2014, plaintiff wrote an email to defendant Indelicato, RIOC's President/CEO, questioning a newly imposed facility fee for YAYP participants, who were almost exclusively low-income Black and Latino males.

39.    Subsequent to plaintiff's email, several individuals, including defendant Indelicato, began retaliating against plaintiff for voicing his concerns about the facility fee.

40.    Prior to March 2014, plaintiff was never given a warning about his work performance or punctuality.

41.    Plaintiff received a written warning about his work performance and punctuality following the email he sent to defendant Indelicato.

42.    On September 3, 2014, plaintiff filed an internal racial discrimination charge against RIOC.

43.    On September 5, 2014, following a meeting with RIOC's General Counsel, Donald Lewis, plaintiff filed a charge with the local New York State Department of Labor ("NYSDOL") office against, *inter alia*, RIOC, defendant Indelicato, and defendant McDade alleging race discrimination.

44.    On September 29, 2014, plaintiff was informed he was being "suspended" from his employment without prior notice, reason, or lawful justification.

6

45.     On December 4, 2015, plaintiff was formally terminated from his RIOC employment.

### *Discrimination Against Black Men*

#### *Defendant Charlene Indelicato*

46.     Defendant Indelicato, a white female, was employed as RIOC's President/CEO from March 2013 through March 2016.

47.     Prior to being named RIOC's President/CEO, defendant Indelicato was twice sued for gender discrimination in the workplace.

48.     Upon information and belief, during defendant Indelicato's tenure at RIOC, every Black employee working in RIOC's main office filed a complaint of racial discrimination against her through either the New York State Department of Labor ("NYSDOL") and/or the Equal Employment Opportunity Commission ("EEOC").

49.     This is the second federal lawsuit against defendant Indelicato in her capacity as RIOC's CEO filed by a Black male alleging racial and gender discrimination against her.

50.     During defendant Indelicato's tenure as RIOC's President/CEO, she made personnel decisions that favored women, specifically white women, and disadvantaged men.

51.     Prior to defendant Indelicato's tenure as President/CEO, RIOC's executive team consisted of a Hispanic female, a Black male, a White male, and a Hispanic male. During Indelicato's term as RIOC's CEO, RIOC's executive team consisted exclusively of white women.

52.     Upon information and belief, during defendant Indelicato's tenure as RIOC's President/CEO and president, only women were hired to work in RIOC's main office, all of whom were white or of Asian descent.

53.     Upon information and belief, during defendant Indelicato's tenure as RIOC's President/CEO all of the Black males employed in RIOC's main office were terminated.

54.     Upon information and belief, defendant Indelicato, in violation of RIOC's by-laws, circumvented the board of trustees to fire RIOC's general counsel, a Black male who filed a lawsuit, which was settled for a six-figure offer pursuant to Rule 68 of the Fed. R. Civ. P.

55.     Upon information and belief, RIOC's former general counsel, like plaintiff, reported issues of public concern, including: (1) questionable and concealed salary activity that negatively affected Black and Latino males; (2) abusive treatment and discriminatory race-based directives given by defendant Indelicato to RIOC's general counsel; and (3) concerns about pervasive discrimination.

56.     Upon information and belief, defendants, including defendant Indelicato, cited false information regarding the work performance of RIOC's Black, male employees, including plaintiff, as a basis for terminating their employment.

57.     After defendant Indelicato's first interaction with plaintiff, she told a white coworker, in words or substance, to "keep Othniel away from me because he is a troublemaker."

58.     Defendant Indelicato made racially discriminatory comments directly to plaintiff, including, for example, "how do we deal with these savages?" This comment, like others, were made in reference to young Black males.

59.     Ultimately, defendant Indelicato, as discussed in detail *infra*, directed plaintiff's termination after he filed a racial discrimination claim against her with the NYSDOL.

*Defendant Claudia McDade*

60.     Defendant McDade is a white female and is employed as RIOC's Director of Human Resources.

61.     Under defendant McDade's tenure as RIOC's Director of Human Resources, she engaged in disparate treatment, including disparate disciplinary actions, and has selectively

8

enforced RIOC's policies and procedures to the detriment of people of color, including plaintiff.

For example:

a. Upon information and belief, Steven Friedman, a RIOC accounts payable employee and a white male, was accused of sexual harassment and inappropriate touching by multiple female RIOC employees. Upon information and belief, defendant Friedman, was not suspended from his job during the investigation of the allegations made against him, received paid outside counseling because of the allegations made against him, and was not removed from his job with RIOC.

b. Upon information and belief, Mike Moreo, a RIOC employee and a white male, verbally abused and physically threatened a RIOC public safety officer in front of members of RIOC's executive team. Upon information and belief, Mr. Moreo was not suspended from his job during the investigation of the allegations made against him, was not reprimanded for his behavior, and was able to meet with defendant McDade almost immediately after the public safety officer made the allegations against him.

c. Defendant McDade did not provide the same accommodation to plaintiff, a black male. Instead, plaintiff was suspended, without just cause, during the fifteen-month investigation into false charges made against him. Defendant McDade refused to meet with plaintiff, despite his several requests to do so, and plaintiff was subsequently terminated from his employment at RIOC.

*Defendant Rudolph Rajaballey*

62. Defendant Rajaballey is a male of Guyanese-Indian descent and is employed as RIOC's purchasing agent.

63. Plaintiff worked under defendant Rajaballey's supervision from approximately 2008-2014.

64. Beginning in 2008 defendant Rajaballey acted dismissively and inappropriately towards plaintiff, treating him like a servant rather than an employee. For example, defendant Rajaballey spoke down to plaintiff in front of coworkers and screamed at him over minor mistakes.

65. From 2008 through 2014, defendant Rajaballey repeatedly called plaintiff a "nigger" and on multiple occasions called him a "fag." Defendant Rajaballey frequently laughed after calling plaintiff a "nigger."

66.     Defendant Rajaballey's comments were heard by other RIOC employees, including defendants Singh and Friedman.

67.     During this period, defendant Rajaballey punched plaintiff in the arm or shoulder on several occasions.

68.     Plaintiff repeatedly requested defendant Rajaballey not to hit him, but defendant Rajaballey ignored plaintiff's request.

69.     Defendant Rajaballey frequently blamed plaintiff for his own mistakes, took credit for plaintiff's work and ideas, and yelled at plaintiff when he didn't catch mistakes in defendant Rajaballey's work product.

70.     Defendant Rajaballey's disrespectful attitude toward plaintiff was so extreme that a member of RIOC's executive team had to speak with him on multiple occasions.

71.     Although defendant Rajaballey's treatment of plaintiff improved after members of RIOC's executive team spoke with him, he always reverted back to unprofessional and disrespectful comments and acts.

*Defendant Steven Friedman*

72.     Defendant Steven Friedman is a white male who worked with plaintiff in RIOC's accounts payable department from 2010 through 2014.

73.     During this time defendant Friedman called plaintiff a "nigger" on numerous occasions in front of other RIOC employees.

74.     On at least one occasion, defendant Friedman told another RIOC employee that he didn't want to work with plaintiff because he is Black.

75.     On several occasions, in front of other RIOC employees, defendant Friedman made comments expressing a personal belief that Black people are not as intelligent as people of other races.

_Defendant Muneswar Jagdharry_

76.     Defendant Muneswar Jagdharry is a male of Guyanese-Indian descent.

77.     Defendant Jagdharry was plaintiff's supervisor from 2009 through 2014.

78.     On numerous occasions, defendant Jagdharry made statements to plaintiff indicating, in words or substance, a personal belief that Black people do not have the same intellectual capacity as other races.

79.     On several occasions defendant Jagdharry stated to plaintiff, "Black people are stronger than Indians and must be worked harder."

80.     Upon information and belief, defendant Jagdharry coordinated with RIOC executives, including defendant Indelicato, to remove plaintiff, the only Black male in his department, and replace him with Natalie Grant, a female of Guyanese-Indian descent.

_Defendant Sean Singh_

81.     Sean Singh is a male of Guyanese-Indian descent, who has worked as a purchasing assistant and grant writer at RIOC since 2009.

82.     Defendant Singh is the nephew of defendant Rajaballey. Upon information and belief, defendant Singh did not disclose his familial relationship with defendant Rajaballey on his application, in violation of RIOC policy.

83.     While plaintiff was employed at RIOC, Singh called plaintiff a "nigger" on numerous occasions in front of other RIOC employees, including his uncle, defendant Rajaballey.

84.     Defendant Singh and defendant Rajaballey jointly demeaned plaintiff in front of other RIOC employees.

_Defendant Nancy Zee_

85.     Defendant Nancy Zee is a female of Asian descent.

86.     Defendant Zee is a staff accountant and worked in the same department as plaintiff from 2006 through 2014.

87.     Defendant Zee treated plaintiff differently than non-Black RIOC coworkers.

88.     Defendant Zee regularly spoke to plaintiff in a loud, rude, and disrespectful manner.

89.     Defendant Zee spoke to other RIOC employees in a courteous and respectful manner.

90.     When plaintiff sat down at defendant Zee's lunch table, she got up and left the lunch table, even if she wasn't finished eating, upon information and belief, because of plaintiff's presence.

91.     Upon information and belief, members of RIOC's executive team met with defendant Zee on multiple occasions about her treatment of plaintiff, but was not disciplined for her behavior.

### *Disparate Treatment and Hostile Work Environment*

92.     Plaintiff, the only Black male working in his department, was subjected to disparate treatment that resulted in a hostile work environment.

93.     Beginning in or about 2013, despite being consistently punctual for work, plaintiff was required to sign in upon arrival in defendant Jagdharry's office to document the time he arrived at work.

94.     Several other RIOC employees working in plaintiff's department, including defendant Singh, arrived to work late on a consistent basis, but were not required to physically sign in to document their arrival.

95.     Defendant Jagdharry frequently yelled at plaintiff in front of other RIOC coworkers.

96.     Several RIOC employees, including defendant McDade, regularly overheard defendant Jagdharry scream at plaintiff, but did nothing to intervene.

97.     On multiple occasions defendant Jagdharry yelled at plaintiff so loudly and violently that RIOC employees, including defendant McDade, intervened in order to calm him down.

98.     Defendant Jagdharry was respectful to and did not yell at other RIOC employees.

99.     Plaintiff was distraught and humiliated by the way he was treated by defendant Jagdharry.

100.    Defendant Jagdharry held plaintiff, the only Black male in the department, to a different and more demanding standard than other employees under his supervision.

101.    Upon information and belief, in holding plaintiff to a higher standard than his coworkers, defendant Jagdharry was attempting to create a pretextual reason for terminating plaintiff's employment at RIOC and replacing him with an employee of Guyanese-Indian descent.

102.    Defendant Zee also treated plaintiff differently than non-Black RIOC coworkers.

103.    Defendant Zee regularly spoke to plaintiff in a loud, rude, and disrespectful manner.

104.    Defendant Zee spoke to other RIOC employees in a courteous and respectful manner.

105.    Defendants Zee, Singh, and Freidman all called plaintiff "stupid" on multiple occasions.

106.    Upon information and belief, defendants Zee, Friedman, and Singh did not call other RIOC employees stupid.

107.    Plaintiff protested defendant Zee's disparate treatment of him to his direct supervisor, as well as RIOC's human resource department, including defendant McDade, on numerous occasions.

108.    When plaintiff protested defendant Zee's behavior to defendant Jagdharry, he responded, "she is old and stuck in her ways and very unlikely to change her prejudices."

***YAYP Program Fee and Subsequent Acts of Discrimination and Creating a Hostile Work Environment***

109.    In or about January 2014, RIOC began charging YAYP participants a $5 facility fee each time they attended a YAYP activity.

110.    YAYP Program participants were almost exclusively Black and Latino males from low-income families.

111.    Individuals not associated with YAYP, including non-Roosevelt Island residents who used the same public facilities, were not charged a facilities fee.

112.    The individuals who used the facilities, but were not associated with YAYP were mostly white and Asian.

113.    Shortly after the facility fee went into effect, YAYP participants and their parents began asking plaintiff questions about the fee.

114.    In or about March 2014, plaintiff wrote an email to defendant Indelicato raising the questions and concerns about the facility fee that YAYP participants and their parents had raised with him.

115.    Shortly after plaintiff sent the email to defendant Indelicato he was called into a meeting with defendant McDade and Erica Wilder, RIOC's Community Relations Specialist.

116.    Defendant McDade and Ms. Wilder reprimanded plaintiff for sending the email to defendant Indelicato and directed him never to email her again.

117.    In or about May 2014, plaintiff received a written warning regarding his work performance and punctuality.  It was the first warning he received in his nearly eight years of employment at RIOC.

118.    Before receiving this warning, plaintiff was not informed by any of his supervisors of any issue with his job performance or his punctuality.

119.    Following the warning, plaintiff was removed from his position as the Saturday evening YAYP coordinator.

120.    On August 14, 2014, plaintiff was formally written up on claims that he was not punctual and not performing his job to RIOC's satisfaction.

121.    Upon information and belief, plaintiff was written up because he is a Black male and/or because he raised concerns about RIOC's discriminatory treatment of Black and Latino males, and not because of work performance or punctuality issues.

122.    Plaintiff was the only RIOC employee in the finance department to be reprimanded for not being punctual, despite the fact that other members of the finance department, including defendants Singh and Friedman, arrived at work after plaintiff and left before him.

123.    After plaintiff was written up, he was approached by Frances Walton, RIOC's CFO, who told him, "I would like to help you but I can't. This is out of my hands."

124.    In August 2014, another RIOC employee told plaintiff, in words or substance, "RIOC is trying to get rid of you."

125.    On September 3, 2014, plaintiff filed a complaint with RIOC's general counsel, complaining of, *inter alia*, racial discrimination.

126.    RIOC's general counsel instructed plaintiff to file his complaint with the NYSDOL.

127.    Plaintiff followed RIOC's general counsel's instructions and filed his racial discrimination claim against RIOC with the NYSDOL.

128.    After plaintiff filed his racial discrimination claim against RIOC with the NYSDOL, he requested to meet with members of RIOC's human resources department, including defendant McDade.

129.    Plaintiff's requests were denied.

130.    After plaintiff filed his claim with the NYSDOL he overheard defendant McDade stated to other RIOC employees, including defendant Friedman, "Now I have to deal with this bullshit claim" referring to plaintiff's NYSDOL racial discrimination claim.

### *Wrongful Suspension and Termination*

131.    On September 29, 2014, at approximately 7:00 AM, plaintiff received a phone call from defendant Indelicato. She stated, in words or substance, that plaintiff was not permitted to return to RIOC because he threatened other employees.

132.    Plaintiff did not threaten other RIOC employee. Upon information and belief, defendants reference to alleged threats made by plaintiff constituted another pretext created by defendants to justify their subsequent discriminatory and retaliatory conduct as described in greater detail *supra*.

133.    By letter dated September 29, 2014, plaintiff was placed on "Administrative Leave with Pay, effective immediately and until further notice" because "of reports by other RIOC employees regarding your behavior at work."

134.    Plaintiff was not told of specific incidents that precipitated his suspension.

135.    On or about September 29, 2014, plaintiff and RIOC's then-Vice President, Chief Financial Officer, Steve Chironis, wrote an email to RIOC's board of trustees informing them of plaintiff's suspension and protesting defendants' retaliatory conduct.

136.    Plaintiff and Steve Chironis also wrote a letter to RIOC's general counsel informing him of plaintiff's suspension.

137.    Upon information and belief, on or about October 10, 2014, RIOC board member Marjorie Smith met with defendant Indelicato regarding plaintiff's suspension.

138.    Upon information and belief, defendant Indelicato told Ms. Smith that several RIOC employees complained about plaintiff's behavior and that a formal report was being prepared that would be distributed to RIOC's board.

139.    Upon information and belief, defendant Indelicato never distributed such a report to RIOC's board.

140.    On or about November 17, 2014, defendant McManus ordered plaintiff to meet with him and RIOC's Deputy Public Safety Director at a Queens diner.

141.    During the meeting with defendant McManus, plaintiff was informed that six RIOC employees – Muneswar Jagdharry, Sean Singh, Nancy Zee, Claudia McDade, Cy Offerman, and Erica Spencer-El – made allegations that plaintiff threatened and/or harassed them.

142.    Plaintiff did not threaten or harass any of these individuals.

143.    Upon information and belief, the six individuals who claimed that plaintiff harassed them each received salary increases, ranging in amount from $5,306 to $10,293, approximately six weeks after plaintiff was suspended.

144.    Upon information and belief, these six individuals were the only people, out of RIOC's approximately 128 employees, to receive salary adjustments at this time who were not promoted or given increased employment responsibilities.

145.    Upon information and belief, salary adjustments at RIOC are only given to employees to for increased responsibilities and promotions.

146.    Natalie Grant is a female RIOC employee of Guyanese-Indian descent whom plaintiff was ordered to train following his March 2014 meeting with defendant McDade and Ms. Wilder.

147.    Upon information and belief, Ms. Grant received a $28,620 salary increase when she was given plaintiff's position and responsibilities.

148.    Upon information and belief, Ms. Grant was compensated approximately $10,000 more than plaintiff.

149.    Upon information and belief, the other individuals who received salary adjustments did not receive a promotion or an increase in responsibility at the time.

150.    On or about December 1, 2014, plaintiff filed a second claim against RIOC with the NYSDOL reporting a supplemental racial discrimination claim as well as a retaliation claim.

151.    Plaintiff remained suspended from his RIOC employment during this period.

152.    On or about November 23, 2015, plaintiff received a letter from RIOC stating that plaintiff's claim of racial discrimination was unsubstantiated.

153.    RIOC's November 23, 2015 letter did not address plaintiff's retaliation claim.

154.    Upon information and belief, from on or about September 29, 2014 through on or about December 3, 2015, defendant McManus conducted an investigation into allegations made against plaintiff.

155.    Upon information and belief, defendant McManus interviewed several RIOC employees, including the defendants herein.

156.    Upon information and belief, defendant McManus created a Public Safety Internal Investigation Report based on his investigation of plaintiff.

157.    Upon information and belief, defendant McManus's report contained false and defamatory statements.

158.    Upon information and belief, defendant McManus knew that his report contained false and defamatory statements.

159.    By letter dated December 4, 2015, nearly 15 months after his initial suspension in September 2014, plaintiff was informed that he was terminated from his employment at RIOC.

160.   The December 4, 2015 letter stated that the reasons for plaintiff's termination were "problems with your job performance and the findings of a Public Safety Internal Investigation Report."

161.   On February 9, 2016, plaintiff filed a Freedom of Information Law ("FOIL") request with RIOC for the Public Safety Internal Investigation Report cited in the December 4, 2015 letter as a reason for his termination.

162.   By letter dated March 28, 2016, RIOC denied plaintiff's FOIL request.

163.   On April 22, 2016, plaintiff appealed RIOC's denial of his FOIL request.

164.   As of this date, RIOC has yet to respond to plaintiff's April 22, 2016 FOIL appeal.

***Damages***

165.   As a result of defendants' conduct, plaintiff has been unable to obtain employment of the same or similar title, prestige, and/or salary.

166.   As a result of defendants' actions, plaintiff has sustained economic and monetary loss and damages, including lost pay and benefits, injury to his name, reputation, and career, emotional and physical distress and has suffered embarrassment, humiliation, and shame in amounts to be proven at trial.

**FIRST CAUSE OF ACTION**
**Discrimination and Hostile Work Environment**
**Pursuant to Title VII, 42 U.S.C. § 2000e *et seq.***
(Against Defendant RIOC)

167.   Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

168.   Defendants' acts of discrimination, creation of a hostile work environment for plaintiff, and plaintiff's subsequent wrongful termination constitute unlawful discriminatory practices within the meaning of 42 U.S.C. § 2000-e *et seq*.

169.   Defendants have discriminated against plaintiff due to his race and gender.

170.     Defendants created a hostile work environment for plaintiff because of his race and gender.

171.     As a direct and proximate result of defendants' unlawful conduct, plaintiff has suffered injuries and damages as set forth above.

172.     Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

173.     Plaintiff has no adequate remedy at law and has suffered serious and irreparable harm to his rights under the Title VII of the Civil Rights Act of 1964.

**SECOND CAUSE OF ACTION**
**Discrimination and Hostile Work Environment Pursuant to**
**New York State Human Rights Law**
(Against all Defendants)

174.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

175.     Defendants' have discriminated against and created a hostile work environment for plaintiff due to his race and gender in violation of New York Human Rights Law, Executive Law § 296 *et seq.*

176.     Upon information and belief, the individual defendants aided and abetted the discriminatory practices and acts alleged herein.

177.     As a direct and proximate result, plaintiff has suffered injuries and damages set forth above.

178.     Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

179.     Plaintiff has no adequate remedy at law and has suffered serious and irreparable harm to their rights under the New York State Human Rights Law.

**THIRD CAUSE OF ACTION**

### Discrimination and Hostile Work Environment Pursuant to
### New York City Human Rights Law
(Against all Defendants)

180.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

181.    Defendants have discriminated against plaintiff on account of his race and gender in violation of New York City Human Rights Law, §8-101 of the New York City Administrative Code.

182.    Defendants have created a hostile work environment for plaintiff as a result of his race in violation of New York City Human Rights Law, §8-101 of the New York City Administrative Code.

183.    Upon information and belief, the individual defendants aided and abetted the discriminatory practices and acts alleged herein.

184.    As a direct and proximate result, plaintiff has suffered injuries and damages set forth above.

185.    Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

186.    Plaintiff has no adequate remedy at law and has suffered serious and irreparable harm to their rights under the New York City Human Rights Law.

## <u>DEMAND FOR RELIEF</u>

**WHEREFORE**, plaintiffs demand the following relief against the defendants, jointly and severally:

(a)    declaratory relief;

(b)    reinstatement;

(c)    compensatory damages for lost wages, including fringe benefits, back pay, and front pay, and also including, without limitation, benefits that would have otherwise

been included in plaintiffs' retirement and/or pension plans, which resulted from the discriminatory acts and practices;

(d)      compensatory damages to compensate fully each plaintiff for emotional distress and other harm proved at trial;

(e)      punitive damages;

(f)      attorney's fees;

(g)      the costs and disbursements of this action;

(h)      interest; and

(i)      such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 18, 2018

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26 Floor
New York, New York 10016
(212) 490-0400

/s/ Keith Szczepanski
_____
Cynthia Rollings
Keith Szczepanski

*Attorneys for Plaintiff Othniel Maragh*