UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                       :

OTHNIEL EVANS MARAGH,            :

                   Plaintiff,     :

                           :          16-CV-7530 (JMF)

          -v-              :

                           :         <u>OPINION AND ORDER</u>

THE ROOSEVELT ISLAND OPERATING    :
CORPORATION, et al.,                  :

                 Defendants.   :

                           :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Othniel Evans Maragh, proceeding without counsel, brings employment-discrimination claims against his former employer, the Roosevelt Island Operating Corporation ("RIOC"), and former coworkers Charlene Indelicato, Claudia McDade, Muneshwar Jagdharry, John McManus, Rudolph Rajaballey, Sean Singh, Steven Friedman, and Nancy Zee.[1]  Maragh's principal claims — brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* — are for discrimination on the basis of race and gender and for a hostile work environment.

---

[1]      The Third Amended Complaint also includes three John or Jane Does (the "Doe Defendants") in the caption, but it includes no allegations whatsoever about them; nor have they been identified or served.  *See* ECF No. 87 ("Compl.") at 1.  Meanwhile, John McManus passed away on April 13, 2020.  ECF No. 169 ("Defs.' Mem"), at 1 n.1.  Defense counsel did not file a formal suggestion of death pursuant to Rule 25(a) of the Federal Rules of Civil Procedure, but they note that Maragh's "allegations against Mr. McManus appear to relate only to the Plaintiff's retaliation claim which was [previously] dismissed" and that "summary judgment should be granted in [McManus's] favor" because "[t]here are no allegations or evidence of discrimination or harassment as to Mr. McManus."  *Id.*  In any event, Maragh's claims against McManus and the Doe Defendants fail for the reasons that follow.

Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. For the reasons that follow, their motion is granted.

BACKGROUND

The following facts, drawn from the Third Amended Complaint and admissible materials submitted by the parties in connection with Defendants' motion, are either undisputed or described in the light most favorable to Maragh, unless otherwise noted. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).[2]

**A. General Background**

Maragh, an African-American man, began working at RIOC on a part-time basis, as a paralegal and temporary employee, in August 2006. Compl. ¶¶ 24-25; Pl.'s 56.1 Response ¶ 2. In December 2006, he began working on a full-time basis as a Purchasing Assistant. ECF No. 158 ("Defs.' 56.1 Statement"), ¶ 4; Pl.'s 56.1 Response ¶ 4; Compl. ¶ 9. As early as 2006, but

---

[2]     Rule 56.1 of the S.D.N.Y. Local Civil Rules provides that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party" and requires that "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." S.D.N.Y. L. Civ. R. 56.1(c)-(d). Although Maragh received notice of Rule 56.1's requirements pursuant to Local Rule 56.2, *see* ECF Nos. 159, 170, many paragraphs in his Rule 56.1 Statement — which is substantively identical to his memorandum of law and a declaration, *see* ECF No. 185 ("Pl.'s Opp'n"); ECF No. 185-22 ("Maragh Decl.") — fail to satisfy this requirement. *See, e.g.*, ECF No. 185-21 ("Pl.'s 56.1 Response"), ¶¶ 4-8 (citing no evidence in the record). Nevertheless, given Maragh's *pro se* status, the Court declines to deem the statements in Defendants' 56.1 Statement admitted on this basis alone. *See Shortt v. Congregation KTI*, No. 10-CV-2237 (ER), 2013 WL 142010, at *7 (S.D.N.Y. Jan. 9, 2013) ("[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (internal quotation marks omitted)); *Anderson v. City of New Rochelle*, No. 10-CV-4941 (ER), 2012 WL 3957742, at *7 (S.D.N.Y. Sept. 4, 2012) (same).

no later than 2011, Maragh also held the title "Inventory Clerk."[3]  From 2008 on, Maragh reported directly to Defendant Muneshwar Jagdharry, RIOC's Assistant Chief Financial Officer/Comptroller.  ECF No. 163 ("Jagdharry Decl.") ¶ 1; Pl.'s 56.1 Response ¶ 5.

In 2011, Maragh was asked to oversee a Young Adult Youth Program ("YAYP") on Friday and Saturday nights; the program, which served predominantly low-income Black and Latino males, grew threefold in participation during Maragh's three years overseeing it.  Compl. ¶¶ 35, 37-38, 110.  In early 2014, "RIOC began charging YAYP participants a $5 facility fee each time they attended a YAYP activity."  *Id.* ¶ 109.  In March of that year, Maragh sent an email to Indelicato, then the President/CEO of RIOC, criticizing the new facility fee.  *Id.* ¶ 38.

On May 12, 2014, Jagdharry gave Maragh a formal memorandum warning him about unsatisfactory workplace performance and conduct.  Jagdharry Decl. ¶ 12; ECF No. 163-1 ("May 12, 2014 Memo").  The memorandum stated that Maragh was "habitually late" and responsible for "an unacceptable frequency of errors"; criticized his "unreliability and lack of diligence" and his "tendency to move away from [his] workstation and interrupt other employees with [his] personal problems"; and accused him of "harassing staff over payments for the basketball program and wasting an enormous amount of time in the process."  May 12, 2014 Memo.  It advised Maragh that if these performance issues were not corrected within three to six months, disciplinary action would be taken.  *Id.*  On the same day, Maragh was also called in to meet with Jagdharry, McDade (the Director of Human Resources and Administration of RIOC), and Frances Walton (the CFO of RIOC); at this meeting, Maragh's superiors aired their frustrations

---

[3]      According to Defendants, Maragh was hired "to the full-time position of Purchasing Assistant/Inventory Clerk on December 18, 2006."  ECF No. 168 ("McDade Decl."), ¶ 3. Maragh, however, maintains that he was "promoted to Inventory Clerk in 2008."  Maragh Decl. ¶ 5.  *But see* Compl. ¶ 27 (alleging that Maragh was promoted to Inventory Clerk "[i]n or about 2011").  In any event, there is no dispute that he held both titles throughout the period relevant to his claims.  *See* Defs.' Mem. 15; Compl. ¶¶ 26-27.

with Maragh's performance and indicated their desire to see change.  *See* McDade Decl. ¶¶ 1, 11; Jagdharry Decl. ¶ 13; Compl. ¶ 123.[4]  Maragh asserts in a declaration that he "became even more focused on his job because of this meeting."  Maragh Decl. ¶ 16.  By contrast, he testified at his deposition that, due to what happened at the meeting, he "couldn't sleep at night" and "could not focus" and that the meeting "ma[de] [him] mentally checkout and [feel] psychologically beaten up from every angle."  ECF No. 160-2 ("Maragh Sept. 29, 2020 Dep."), at 147.[5]

Three months later, on August 14, 2014, Maragh received another writeup.  Jagdharry Decl. ¶ 15; McDade Decl. ¶ 14; ECF No. 163-2 ("August 14, 2014 Memo").  It listed the topics discussed three months earlier as "[e]xcessive lateness"; "[a]buses of paid time off"; "[p]oor work performance"; "[l]ack of attention to detail with regard to work assignments"; "[f]requent wandering from your work station and/or the administrative office"; and "[f]requently disrupting or harassing other employees."  August 14, 2014 Memo.  The memorandum stated that there was "need to reiterate these problematic issues" and to draw Maragh's "attention to the fact that there has been little to no improvement to any of" them.  *Id.*  "This pattern of behavior and continued display of a total lack of commitment by [Maragh] toward [his] position with RIOC," the memorandum declared, "is unacceptable."  *Id.*  It notified Maragh that he was "required to correct these deficiencies and satisfactorily fulfill [his] responsibilities within the next three (3)

---

[4]     Although Maragh agreed in his interrogatory responses with Defendants' testimony that the other participants in the May 12, 2014 meeting were Jagdharry, McDade, and Walton, ECF No. 160-1 ("Maragh ROG Responses"), ¶ 7(E), his declaration instead states that McDade and *Indelicato* were "presen[t]" at the meeting with Jagdharry, Maragh Decl. ¶ 15.  Indelicato testifies that she had no direct involvement with the May 2014 meeting.  *See* ECF No. 162 ("Indelicato Decl."), ¶ 11.

[5]     In his declaration, Maragh claims that he "did not at any point during the deposition say or admit[] that he mentally 'checked out'" and that the deposition transcript, which indicates otherwise, "has been altered and fabricated."  Maragh Decl. ¶ 17.

months or further disciplinary action will be taken." *Id.* Maragh had another meeting with

Jagdharry and McDade that same day in which they reiterated that Maragh had three months to

correct the problems identified in the memorandum or there would be disciplinary consequences.

McDade Decl. ¶ 14; Jagdharry Decl. ¶ 15; Maragh Decl. ¶ 12.

On September 3, 2014, Maragh filed an internal charge of race discrimination against

RIOC and various employees, his first formal allegation of maltreatment during his time at

RIOC. Compl. ¶ 42.[6] Shortly thereafter, Maragh filed his internal complaint with the New York

State Department of Labor ("DOL"), which then launched an investigation in coordination with

the Workforce Development Unit of the Governor's Office of Employee Relations ("GOER").

*See* Compl. ¶ 127; Maragh Decl. ¶ 19; Indelicato Decl. ¶ 15; McDade Decl. ¶ 17. Meanwhile,

from mid-August to September 2014, several of Maragh's colleagues expressed concern about

his "threatening and harassing workplace behavior." Defs.' 56.1 Statement ¶ 21; *see also*

Jagdharry Decl. ¶ 17; McDade Decl. ¶ 21; ECF No. 167 ("Singh Decl."), ¶¶ 11-12. On

September 29, 2014, after consulting with DOL and GOER, RIOC placed Maragh on paid

administrative leave, pending the results of an investigation by RIOC's Public Safety

Department ("PSD") into his allegedly harassing behavior. Indelicato Decl. ¶ 17; McDade Decl.

¶ 21; Jagdharry Del. ¶ 18; Compl. ¶¶ 131, 133; Maragh Decl. ¶ 21. The PSD investigation took

place around the same time that DOL conducted its investigation into Maragh's claims of

---

[6]     This internal complaint appears to be the document filed at ECF No. 185-10, but, as there
is no "foundation from a witness with personal knowledge" authenticating the document, the
Court cannot and will not consider it. *Picard v. RAR Entrepreneurial Fund, Ltd.*, No. 20-CV-
1029 (JMF), 2021 WL 827195, at *9 (S.D.N.Y. Mar. 3, 2021); *accord Sys. Agency v. Villanueva*,
No. 19-CV-6486 (JMF), 2020 WL 7629879, at *1 (S.D.N.Y. Dec. 22, 2020)  ("[D]ocuments that
are not attached to an affidavit made on personal knowledge setting forth facts that would be
admissible in evidence and sufficient to authenticate the document cannot be considered on
summary judgment." (internal quotation marks omitted)).

discrimination.  *See* ECF No. 162-1 ("IIR"), at 6-8; ECF No. 161 ("DOL Report"), at 4-5; *see also* McDade Decl. ¶¶ 17, 21-22.

Within a month, Maragh filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), dated October 28, 2014, asserting discrimination based on race, color, and sex and a claim of retaliation stemming from his internal complaint.  Compl. ¶ 20; McDade Decl. ¶ 16; ECF No. 168-3 ("EEOC Complaint"), at 1.  Around December 3, 2014, Maragh sent an email to DOL updating his initial internal complaint, adding five new respondents as well as new allegations: that he was called "[s]tupid," called a racial slur, and was paid less than employees who started after him.  *See* Compl. ¶ 150; DOL Report 1.  After months of inquiry, the DOL investigation concluded in February 2015 that Maragh's allegations of discrimination or retaliation were unsubstantiated.  *See* DOL Report 34-38.  In conclusion, the DOL Report noted that "[w]hile there appeared to be behaviors [at RIOC] consistent with favoritism, . . . it could not be substantiated that the difference in treatment was based on a protected status.  The evidence appeared to favor unprofessionalism, poor management decisions, and inappropriate actions due to personal dislike."  *Id.* at 38.  Conversely, the RIOC's PSD found that the charges *against* Maragh alleging that he had harassed other employees were "credible."  IIR 79.  On December 4, 2015, Maragh's employment with RIOC was terminated due to poor performance and the findings of the PSD Report.  Compl. ¶¶ 159-60; Indelicato Decl. ¶¶ 16-17; McDade Decl. ¶ 22.

## B.  Procedural History

Maragh, proceeding without counsel, filed his initial complaint on September 26, 2016, ECF No. 2, and a First Amended Complaint on March 6, 2017, ECF No. 24, alleging a "potpourri of claims" against several coworkers and RIOC itself.  *Maragh v. Roosevelt Island Operating Corp.*, No. 16-CV-7530 (JMF), 2018 WL 6573452, at *1 (S.D.N.Y. Dec. 13, 2018)

(ECF No. 84).[7]  On June 14, 2017, counsel entered a notice of appearance on Maragh's behalf,

ECF No. 50, and Maragh subsequently filed a Second Amended Complaint, ECF No. 53.  On

September 8, 2017, Defendants moved to dismiss the Second Amended Complaint in its entirety

pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.  ECF No. 60.  By

Opinion and Order entered on December 13, 2018, the Court granted the motion in part and

denied it in part.  Specifically, the Court dismissed all of Maragh's claims "except for his

discrimination and hostile work environment claims under Title VII (against RIOC) and under

the NYSHRL and NYCHRL (against RIOC and the individual Defendants in their individual

capacities)."  *Maragh*, 2018 WL 6573452, at *6.  The Court further ruled that "Maragh may not

seek punitive damages except against the individual Defendants under the NYCHRL."  *Id.*

Maragh then filed the operative Third Amended Complaint on December 21, 2018, *see* Compl.,

which Defendants answered on January 14, 2019, ECF No. 90.

In May 2019, after discovery had commenced, Plaintiff's counsel moved to withdraw

from his representation of Maragh, ECF Nos. 94, 95, which the Court granted as unopposed on

June 5, 2019, ECF No. 102, leaving Maragh to prosecute his case *pro se*.  Discovery finally

closed on October 7, 2020, after the parties sought, and received, numerous extensions.  *See* ECF

Nos. 102, 110, 125, 131, 133, 135, 140.  Maragh, however, did not issue written discovery

requests to Defendants or take any depositions.  *See* Defs.' Mem. 8.

Defendants moved for summary judgment on January 11, 2021.  ECF No. 157.  Maragh

filed opposition papers on February 25, 2021, ECF Nos. 179, 180, and Defendants filed a reply

on March 10, 2021, ECF No. 181.  On April 2, 2021, however, Maragh filed a new opposition,

---

[7]     The initial and First Amended Complaints also named as Defendants the RIOC Board of
Directors and several individual members of the Board, *see, e.g.*, ECF No. 53 ¶¶ 22-31, but these
claims were voluntarily dismissed later, *see* ECF No. 57.

with thirty attached exhibits, Pl.'s Opp'n, and three days later filed a letter seeking leave to submit an audio recording to the Court, ECF No. 186.[8]  Shortly thereafter, Defendants moved to strike the April 2020 opposition filings, arguing that "[a]t no time did [Maragh] indicate that [his earlier] filings were incomplete or required any supplementation" and that he did not "set forth any need or justification for" making supplemental filings.  ECF No. 187, at 1.  Maragh responded that his February 2020 filings "were incomplete place holders" filed "in conjunction with [his] request for an extension of time" of the then-existing briefing deadlines.  ECF No. 189.  In an Order dated April 9, 2021, the Court explained that "[a]lthough" it was "frustrated that [Maragh] gave no indication that his opposition papers filed on February 24, 2021, were anything other than his complete and final submission until well over a month later, during which time Defendants timely filed their reply, in light of [Maragh's] *pro se* status, the Court will consider [Maragh's] filings of April 2, 2021, and April 5, 2021, as his opposition to Defendants' motion for summary judgment, superseding his prior submission."  ECF No. 190.  "For avoidance of doubt," the Court continued, "the Court will disregard [Maragh's] prior opposition papers filed on February 24, 2021, ECF Nos. 179-80, as well as Defendants' reply papers filed on March 10, 2021, ECF Nos. 181-83."  *Id.*  The Court directed Defendants' to file a new reply, *id.*, which Defendants timely filed, ECF No. 194.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir.

---

[8]      The Court granted Maragh permission to file the audio recording, ECF No. 198, but it declines to rely on it because there is no foundation to authenticate it.  *See supra* note 6.  In any event, even if the Court were to consider the recording, it would not change the conclusions below.

2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  Critically, however, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in

evidence," and must show "that the affiant or declarant is competent to testify on the matters stated." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

It is well established that courts must give "special solicitude" to *pro se* litigants in connection with motions for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to raise the strongest arguments that they suggest.  *See, e.g.*, *Clinton v. Oppenheimer & Co.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011).  This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).  Nor is the "duty to liberally construe a plaintiff's [filing] . . . the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 MOORE'S FEDERAL PRACTICE § 12.34[1][b] (2005)).

Notably, the Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often disputed. *Jamilik v. Yale Univ.*, 362 F. App'x 148, 149 (2d Cir. 2009) (summary order) (internal quotation marks omitted).  Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  Indeed, just as in the non-discrimination context, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts.  [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (cleaned up).  That is, a "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational

finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and

that more likely than not discrimination was the real reason for the employment action."

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (cleaned up).

## DISCUSSION

As discussed above, Maragh's sole remaining claims are for discrimination on the basis

of race and sex and for a hostile work environment, under Title VII, the NYSHRL, and the

NYCHRL.[9]  The Court will address Maragh's Title VII claims first.

### A.  Gender and Race Discrimination Claims

Maragh's discrimination claims under Title VII are analyzed according to the three-step,

burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792 (1973).  *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010);

*Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 65-66 (S.D.N.Y. 2016).  Under the

framework, a plaintiff bears the burden of establishing a *prima facie* case of discrimination.  That

is, the plaintiff must establish that: (1) he belonged to a protected class; (2) he was qualified for

the position he sought; (3) he suffered an adverse employment action; and (4) the adverse

employment action occurred under circumstances giving rise to an inference of discriminatory

intent.  *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251-52 (2d Cir. 2014).  Significantly,

courts evaluating the sufficiency of evidence on a motion for summary judgment must "carefully

---

[9]     Maragh's opposition brief also makes a single passing reference to "age (youthful)
discrimination."  Pl.'s Opp'n 3.  To the extent Maragh alleges such a claim, it fails, both because
it is entirely unsupported by record evidence and because it appears nowhere in the Complaint.
*See Caserto v. Metro-N. R.R. Co.*, No. 14-CV-7936 (JMF), 2016 WL 406390, at *1 n.1
(S.D.N.Y. Feb. 2, 2016) ("[A] party may not amend a complaint through his memorandum of
law in opposition to summary judgment . . . .").  Moreover, age "is not a protected characteristic
under Title VII" and age discrimination "cannot give rise to a Title VII hostile work environment
claim."  *Addo v. N.Y. Health & Hosps. Corp.*, No. 15-CV-8103 (RA), 2017 WL 4857593, at *5
(S.D.N.Y. Oct. 25, 2017).

distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999). "[A]n inference," the Second Circuit has noted, "is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Id.* (cleaned up).

Measured against these standards, Maragh does not even come close to establishing a *prima facie* case of gender discrimination. To begin, his Complaint barely mentions gender at all; the allegations that do reference gender are entirely conclusory and mostly do not relate to Maragh himself. Moreover, while all of the allegations are directed at Indelicato — accusing her of making "personnel decisions that favored women"; referencing RIOC's all-female executive team during her tenure; hiring of only women to work in RIOC's main office; and dismissing RIOC's former general counsel, a Black man, Compl. ¶¶ 50-52, 54; *see also* Maragh Decl. ¶¶ 34, 36 — Maragh himself admits that he has no personal knowledge of the RIOC hiring process under Indelicato. Maragh Sept. 29, 2020 Dep. 219, 221. In fact, he acknowledges that his claims about Indelicato's personnel decisions are "speculation." *Id.* at 221. (By contrast, Indelicato testifies that she did not even make the decision to terminate the former general counsel. Indelicato Decl. ¶ 10.) At bottom, therefore, Maragh's gender discrimination claim relies on little more than his own subjective sense of what he "felt in the air." Maragh Sept. 29, 2020 Dep. 190. That is plainly insufficient to support a claim of gender discrimination. *See, e.g.*, *Lue v. JPMorgan Chase & Co.*, No. 16-CV-3207 (AJN), 2018 WL 1583295, at *7 (S.D.N.Y. Mar. 27, 2018) ("Plaintiff cannot prove discrimination by speculation and by reliance on her own subjective beliefs."), *aff'd,* 768 F. App'x 7 (2d Cir. 2019) (summary order).

Whether Maragh makes out a *prima facie* case of race discrimination is a closer question, but here too he ultimately falls short. For starters, most of his allegations concern facially neutral

actions.  These include, among other things, Indelicato calling Maragh a "troublemaker";

Rajaballey, RIOC's Purchasing Manager, acting "dismissively and inappropriately" towards

Maragh, including speaking down to him and screaming; Rajaballey punching Maragh in the arm

or shoulder and blaming him for mistakes; Rajaballey and his assistant Singh demeaning Maragh

in front of other employees; Zee, a colleague, leaving the lunch table when Maragh sat down;

Zee speaking to Maragh in a "loud, rude, and disrespectful manner"; and Jagdharry yelling at

Maragh in front of coworkers.  Compl. ¶¶ 57, 64, 67, 69, 81, 84, 86, 88, 90, 95, 97 (internal

quotation marks omitted); *see also* Maragh Decl. ¶¶ 16, 22; ECF No. 164 ("Rajaballey Decl."),

¶ 1.  In general, such "facially neutral comments" and actions "[do not] give[] rise to an

inference of discrimination." *South v. Cont'l Cas. Co.*, No. 17-CV-5741 (RA), 2018 WL

4689106, at *11 (S.D.N.Y. Sept. 27, 2018).  After all, "Title VII is not a civility statute.  Title

VII solely addresses conduct motivated (a) by animus towards members of protected class and

(b) because of the victim's protected characteristics; it does not reach instances of generally poor

behavior, personal animosity or even unfair treatment." *White v. N.Y.C. Dep't of Educ.*, No. 05-

CV-2064 (RRM) (LB), 2008 WL 4507614, at *5 (E.D.N.Y. Sept. 30, 2008) (citation omitted).

Maragh asserts that each of these incidents is evidence of race discrimination, but he

proffers no evidence (let alone admissible evidence) to support that assertion aside from his own

personal belief.  For example, when questioned about whether Singh's demeaning behavior

involved any racial animus at his deposition, Maragh said, "I can't give you any specifics

because I don't want to makeup anything or bring it out but he's insinuated stuff . . . ."  ECF No.

160-3 ("Maragh Oct. 6, 2020 Dep."), at 199.  And when asked about the punching incident

involving Rajaballey, Maragh said "I would have to speculate [on] it being because I am Black."

*Id.* at 43.  A plaintiff's insinuation and speculation do not a *prima facie* case of discrimination

make.  *See, e.g.*, *Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 392 (S.D.N.Y.

2016) ("[A plaintiff's] own subjective belief that he was discriminated against . . . is not enough to make out a prima facie discrimination case under Title VII." (internal quotation marks omitted)); *Yu v. N.Y. State Unified Ct. Sys. Off. of Ct. Admin.*, No. 11-CV-3226 (JMF), 2013 WL 3490780 (S.D.N.Y. Jul. 12, 2013) (granting summary judgment against a plaintiff whose claims were "based wholly on her personal opinion and 'feeling' that she was not treated with respect due to her race and gender").[10]

Maragh tries to raise an inference of discrimination by suggesting that he was treated differently than two white RIOC employees, *see* Compl. ¶ 61; Maragh Decl. ¶ 12, but his attempt fails. "To raise an inference of discrimination by showing that he was subjected to disparate treatment, the plaintiff must establish that he was 'similarly situated in all material respects' to the individuals with whom he seeks to compare himself." *Diggs v. Niagara Mohawk Power Corp.*, 691 F. App'x 41, 43 (2d Cir. 2017) (summary order) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *accord Ruiz v. County of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct."

---

[10]    Maragh does submit a declaration from Steven Chironis, RIOC's former Interim President and Chief Financial Officer, in which Chironis indicates that he witnessed "rude, ill-mannered, disrespected [sic] behavior by Nancy Zee towards Othniel Maragh which [he] believe[s] was rooted in 'racism.'" ECF No. 185-26 ("Chironis Decl."), ¶ 2. But *Chironis's* subjective "belie[f]" is no better evidence than Maragh's. Moreover, Chironis himself states in his declaration that his employment at RIOC ended on August 31, 2013, *id.* ¶ 1, meaning that he lacks personal knowledge about the relevant timeframe, *see Petty v. City of New York*, 633 F. App'x 52, 53 (2d Cir. 2016) (summary order) ("Claims under the NYSHRL and NYCHRL are subject to a three-year statute of limitations from the date that the claims accrue."); *Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) (summary order) ("[O]nly events that occurred during the 300-day period prior to filing [an administrative charge] are actionable under Title VII." (cleaned up)). For what it is worth, Chironis's declaration is thus in tension, if not conflict, with the Complaint, which alleges that "[o]n or about September 29, 2014," Maragh and Chironis, "RIOC's *then*-Vice President, Chief Financial Officer," wrote "an email to RIOC's board of trustees informing them of [Maragh's] suspension and protesting [D]efendants' retaliatory conduct." Compl. ¶ 135 (emphasis added).)

*Ruiz*, 609 F.3d at 493-94 (internal quotation marks omitted).  Maragh fails to satisfy these

standards here.  For one thing, the two white employees, Steven Friedman and Mike Moreo, held

different jobs than he held.  *See* Maragh Sept. 29, 2020 Dep. 261.  Moreover, as the DOL Report

noted, the uniqueness of Maragh's position makes any attempts to compare him with other

employees even more complicated.  DOL Report 32.  On top of that, Maragh testified that he has

no personal knowledge of the investigations of either Moreo and Friedman or the subsequent

administrative decisions made with respect to them — rendering his comparisons entirely

speculative.  Maragh Sept. 29, 2020 Dep. 264-65.  Meanwhile, Defendants submit evidence

showing that Maragh's conduct was not similar to Moreo and Friedman's: Moreo was involved

in a verbal altercation with one other employee and Friedman was accused of sexual harassment

by two employees.  *See* McDade Decl. ¶ 21.  By contrast, several coworkers accused Maragh of

engaging in threatening behavior and raised safety concerns; RIOC's PSD investigated and

found those accusations credible.  *See id.*  In short, Maragh fails to prove that he was similarly

situated to either Friedman or Moreo.

On its face, Maragh's strongest evidence of discrimination by far is his testimony that co-

workers — most notably, Rajaballey, Singh, and Friedman — used racial slurs, including the n-

word.  *See* Compl. ¶¶ 33, 65, 73, 83; Maragh Decl. ¶¶ 19, 23, 25, 28.[11]  The use of such language

can certainly be powerful evidence of discriminatory intent.  *See, e.g.*, *Rivera v. Rochester*

*Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) ("[P]erhaps no single act can more

quickly alter the conditions of employment and create an abusive working environment than the

use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his

---

[11]     In his Complaint, Maragh also accuses Indelicato of calling Black men "savages," Compl. ¶ 58, but there is no admissible evidence that she did so.  In fact, Maragh admitted in his deposition that he "[did]n't remember if" Indelicato "used the word 'savages.'"  Maragh Sept. 29, 2020 Dep. 238.

subordinates." (internal quotation marks omitted)).  But that is not the case here for several

reasons.  First, "allegedly discriminatory comments made by a nondecisionmaker are, as a matter

of law, insufficient to raise an inference of discrimination."  *De La Cruz v. City of New York*, 783

F. Supp. 2d 622, 643 (S.D.N.Y. 2011).  Here, assuming that Maragh's allegations are even true,

the people he accuses of having used problematic language — including Jagdharry (who

allegedly stated that "Black people are stronger than Indians and must be worked harder,"

Compl. ¶ 79) — had no role in the only adverse employment action that Maragh experienced, his

termination.  Rajaballey Decl. ¶ 2; ECF No. 165 ("Friedman Decl.") ¶ 2; Singh Decl. ¶ 2;

Jagdharry Decl. ¶ 19.  Additionally, Maragh's allegations are almost entirely lacking in specifics

— most notably, with respect to when and under what circumstances almost all of the comments

were made, let alone whether they were made within the limitations period.  *See, e.g.*, Maragh

Decl. ¶ 36 ("[T]he individuals engaged in the activities throughout the Plaintiff's tenure . . . .");

Maragh Oct. 6, 2020 Dep. 120 ("[Friedman used the n-word] throughout the whole years I was

there.").  No reasonable jury could rule in Maragh's favor on the basis of such amorphous

evidence.  *See, e.g.*, *Foxworth v. Am. Bible Soc.*, No. 03-CV-3005 (MBM), 2005 WL 1837504,

at *9 (S.D.N.Y. July 28, 2005) (dismissing a Title VII discrimination claim where because it was

"lacking in specific details of the disparate treatment she allegedly suffered" and was "also flatly

contradicted by [the] plaintiff's [own] deposition testimony"), *aff'd sub nom. Mitchell-Foxworth

v. Am. Bible Soc.*, 180 F. App'x 294 (2d Cir. 2006) (summary order); *cf. Stofsky v. Pawling Cent.

Sch. Dist.*, 635 F. Supp. 2d 272, 302 (S.D.N.Y. 2009) (dismissing a Title VII retaliation claim on

summary judgment where the plaintiff relied on "amorphous assertions . . . bolstered by no

evidence in the record from which a reasonable jury could conclude that [the p]laintiff ever

engaged in protected activity").

More broadly, the Court concludes that it need not, and should not, credit Maragh's allegations about the use of racial slurs, including the n-word.  To be sure, "a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756 (1978).  In *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), however, the Second Circuit recognized a narrow exception to that rule "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete."  *Id.* at 554.  In such a case, the court explained, "it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account."  *Id.* (cleaned up); *see also, e.g.*, *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 104-06 (2d Cir. 2011) (per curiam) (affirming dismissal of a sexual harassment claim and disregarding the plaintiff's allegations where there were "plain inconsistencies between the facts advanced by [the plaintiff] in opposition to summary judgment and those alleged in her original and amended complaints, in sworn interrogatory responses, in portions of her deposition testimony, in her complaints before the EEOC, and in prior sworn testimony").  Along similar lines, the Second Circuit has held that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).  If a party "could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony," the court reasoned, "this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Id.* (quoting *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

Applying these standards here, the Court concludes that Maragh's allegations need not and should not be credited. Maragh conspicuously failed to even mention the n-word in the original complaint charging RIOC with race discrimination that he filed with the DOL in September 2014; he added the allegations for the first time in the amended complaint that he filed in December 2014, *after* he had been placed on administrative leave. *See* DOL Report 1; Defs.' 56.1 Statement ¶ 22. Meanwhile, in his interrogatory responses, Maragh claimed Friedman called him the n-word over ten times, Singh over twenty times, and Rajaballey over thirty times; at his deposition, however, he provided dramatically different numbers (two or three, fifty to one hundred or more, and fifty to one hundred, respectively). Maragh ROG Response 5-6; Maragh Oct. 6, 2020 Dep. 30, 120, 194. And, of course, Maragh provides no evidence — documents, declarations from other witnesses, etc. — to substantiate his conclusory allegations. *See, e.g.*, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."). By contrast, Defendants submit declarations from Maragh's co-workers adamantly denying that they ever used racial slurs, including the n-word, or heard them used. *See* Friedman Decl. ¶¶ 3, 9; Singh Decl. ¶¶ 4-5, 8; Rajaballey Decl. ¶ 9; ECF No. 166 ("Zee Decl."), ¶ 5; Jagdharry Decl. ¶ 21; McDade Decl. ¶ 8; Indelicato Decl. ¶ 19. And they point to the DOL report, which found Maragh's charges to be unsubstantiated based in part on the inconsistencies in his claims. DOL Report 37. To be sure, Maragh did not previously contradict his own testimony, as the plaintiff in *Jeffreys* did. *See* 426 F.3d at 552. At the same time, however, the plaintiff in *Jeffreys* offered the statements of others to corroborate his claims. *See id.* Maragh does not even have that. Under these circumstances, no jury "could *reasonably* find for the plaintiff." *Id.* at 554 (quoting *Anderson*, 477 U.S. at 252) (emphasis in original).

In any event, even if the foregoing evidence were sufficient to establish a *prima facie* case of discrimination, summary judgment would still be warranted.  Defendants easily meet their burden of demonstrating that RIOC had legitimate, nondiscriminatory reasons to fire Maragh: He had "pervasive" performance issues, including work done inaccurately, incompletely, or late; punctuality issues that he acknowledged; and, most significantly, engaged in harassing workplace behavior that led other employees to fear for their safety.  Jagdharry Decl. ¶¶ 12, 17-18; Indelicato Decl. ¶ 17; McDade Decl. ¶¶ 13, 21; Singh Decl. ¶ 11, 13-15; Rajaballey Decl. ¶ 3; Zee Decl. ¶¶ 8-11; Friedman Decl. ¶ 11; Maragh Sept. 29, 2020 Dep. 92-93.  Moreover, Maragh was terminated only after he was given two formal warnings that there would be disciplinary consequences if his performance did not improve and after an internal investigation concluded that co-workers had credibly expressed concerns for their safety.  Jagdharry Decl. ¶¶ 12, 15; Indelicato Decl. ¶ 16.  Thus, it becomes Maragh's burden to demonstrate that these justifications were merely a pretext for discrimination.  *See, e.g.*, *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009).  Maragh hardly attempts to do so, and certainly does not succeed.  Indeed, he testified at his deposition that no one referred to his race in connection with his being placed on administrative leave or ultimately terminated.  *See* Maragh Sept. 29, 2020 Dep. 173, 190.  And while Maragh does take issue with the negative performance reviews that Defendants say contributed to his termination, a plaintiff's "subjective disagreement with his co-workers' characterization of his job performance does not create a material issue of fact as to whether Defendants' asserted reasons for Plaintiff's termination were pretextual."  *Concha v. Purchase Coll. State Univ. of N.Y.*, No. 17-CV-8501 (JCM), 2019 WL 3219386, at *9 (S.D.N.Y. July 17, 2019).  In short, even assuming *arguendo* that Maragh could meet his burden to establish a *prima facie* case of race discrimination in violation of Title VII, summary judgment on his claim would still be warranted.

**B.  Hostile Work Environment Claim**

Maragh's only remaining federal claim is for the creation of a hostile work environment. To prove a hostile work environment claim under Title VII, a plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *accord Rivera*, 743 F.3d at 20.  That showing requires a plaintiff to identify incidents that are "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation marks omitted).  "In considering whether a plaintiff has met this burden, courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Rivera*, 743 F.3d at 20 (cleaned up).  The "test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Alfano*, 294 F.3d at 374 (internal quotation marks omitted).  Significantly, the creation of a hostile work environment "is actionable under Title VII only when it occurs because of . . . [a] protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

Maragh's hostile work environment claim is based on the same evidence as his discrimination claim.  Thus, it suffers from the same fatal defects, including the dearth of admissible evidence, allegations of facially neutral conduct, and the amorphous and shape-shifting nature of Maragh's testimony.  *See, e.g.*, *Gobin v. N.Y.C. Health & Hosps. Corp.*, No. 04-CV-3207 (WHP), 2006 WL 2038621, at *5 (S.D.N.Y. Jul. 19, 2006) (dismissing a hostile work environment claim where the plaintiff identified three specific harassing statements and

otherwise "testified that the comments were made 'many times.'  When a plaintiff identifies only a few incidents, general allegations of constant abuse must be accompanied by some corroborating evidence to support a claim for hostile work environment." (cleaned up)); *see also, e.g.*, *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 849 (S.D.N.Y. 2013) (dismissing a hostile work environment claim where the plaintiff offered only "vague, conclusory statements").

Moreover, to the extent that Maragh's hostile work environment claims against RIOC are based on a theory of vicarious liability for the alleged acts of his coworkers, those claims fail for an additional reason.  An employer cannot be held liable for an alleged hostile environment perpetrated by a plaintiff's coworkers unless it "either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it."  *Quinn v. Green Tree Credit Corp.*, 159 F. 759, 766 (2d Cir. 1998), *abrogated in part on other grounds*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  Here, there is no evidence that RIOC knew about any alleged harassment until at least September 2014, at which point Maragh's allegations were thoroughly investigated by the DOL.  And RIOC provided a "reasonable avenue of complaint" that was memorialized in an employee handbook, *see* ECF No. 168-1, at 3-4, 36-37; ECF No. 195-1, yet Maragh did not avail himself of the procedures until September 2014.[12] Maragh claims that he did not do so sooner because he was "scared," Maragh Sept. 29, 2020 Dep. 250, but where, as here, there is no evidence that "the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such

---

[12]     Maragh denies receiving the RIOC employee handbook, *see* Maragh Decl. ¶ 38, but this denial is belied by a statement, signed by Maragh on October 2, 2008, acknowledging receipt of the handbook, ECF No. 195-1.  Moreover, whether or not Maragh received the RIOC handbook, he admits that he received an EEOC handbook detailing New York State discrimination law and procedures for raising complaints.  Maragh Decl. ¶ 38; ECF No. 168-2, at 31-33.  That handbook alone is enough to satisfy RIOC's burden.

complaints," *Eichler v. Am. Int'l Grp., Inc.*, No. 05-CV-5167 (FM), 2007 WL 963279, at \*12 (S.D.N.Y. Mar. 30, 2007) (internal quotation marks omitted), such subjective beliefs do not justify the failure to pursue a reasonable avenue for complaint.

In short, Defendants are entitled to summary judgment on Maragh's Title VII hostile work environment claim as well.

## C.  NYSHRL and NYCHRL Claims

Having dismissed Maragh's Title VII claims, the Court must decide whether to exercise supplemental jurisdiction over his claims under the NYSHRL and NYCHRL.  A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The statute does not create "a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.*; *see also Kolari v. N. Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to . . . summary judgment . . . , courts should abstain from exercising pendent jurisdiction." (internal quotation marks omitted) (citing cases)).

Despite the general presumption, the Court concludes, in the interest of judicial economy, that it should exercise supplemental jurisdiction over Maragh's NYSHRL claims, as it is well established that the substantive standards are the same as the Title VII standards applied above. *See Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 n.3 (2d Cir. 2016) ("[T]he standards for evaluating retaliation claims are identical under Title VII and the NYSHRL." (cleaned up)); *Vivenzio*, 611 F.3d at 106 ("The substantive standards applicable to claims of employment discrimination under Title VII . . . are also generally applicable to claims of employment discrimination brought under . . . the NYSHRL."). By contrast, the Court declines to exercise supplemental jurisdiction over Maragh's NYCHRL claims "because they are subject to a different standard and must be analyzed separately." *Zenie v. Coll. of Mount Saint Vincent*, No. 18-CV-4659 (JMF), 2020 WL 5518144, at *8 (S.D.N.Y. Sept. 14, 2020). "In light of that, and because the law governing claims under the NYCHRL is still developing, [Maragh's] NYCHRL claims present questions 'best left to the courts of the State of New York.'" *Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647 (JMF), 2017 WL 3475494, at *4 (S.D.N.Y. Aug. 11, 2017) (quoting *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001)), *aff'd sub nom. Nunez v. Lima*, 762 F. App'x 65 (2d Cir. 2019) (summary order). Accordingly, Maragh's remaining NYCHRL claims — for discrimination and hostile work environment — are dismissed without prejudice to him refiling them in state court.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED, Maragh's Title VII and NYSHRL claims are dismissed in their entirety with prejudice, and his NYCHRL claims are dismissed without prejudice to refiling in state court.

One final housekeeping matter remains. The Court previously granted Defendants leave to file two documents under seal on a temporary basis, ECF No. 155 — namely, the reports filed

at ECF Nos. 161-1 and 162-1.  But Defendants improperly also filed the accompanying

declarations under seal at ECF Nos. 161 and 162.  It is well established that filings that are

"relevant to the performance of the judicial function and useful in the judicial process" are

considered "judicial documents" to which a presumption in favor of public access attaches.

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal quotation

marks omitted).  Significantly, assessment of whether the presumption in favor of public access

is overcome must be made on a document-by-document basis, *see, e.g.*, *Brown v. Maxwell*, 929

F.3d 41, 48 (2d Cir. 2019), and the mere fact that a court does not rely upon a document in

adjudicating a motion does not remove it from the category of "judicial documents," *id.* at 50-51.

Finally, the mere fact that information is sealed or redacted by agreement of the parties is not a

valid basis to overcome the presumption.  *See, e.g.*, *United States v. Wells Fargo Bank N.A.*, No.

12-CV-7527 (JMF), 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015).  That is, a party must

demonstrate reasons to justify sealing or redaction separate and apart from a private agreement to

keep information confidential.  Accordingly, notwithstanding any prior Order directing the

parties to address the propriety of continued sealing, any party that believes, in light of the

foregoing principles, that any materials currently under seal or in redacted form should remain

under seal or in redacted form is ORDERED to show cause in writing, on a document-by-

document basis, why doing so would be consistent with the presumption in favor of public

access no later than **two weeks from the date of this Opinion and Order**.  Proposed redactions

should be "narrowly tailored" to achieve the aims that justify sealing.  *See, e.g.*, *Brown*, 929 F.3d

at 47 (internal quotation marks omitted).  As Defendants never sought leave to file the Bartley or

Indelicato Declarations under seal, they shall file both documents on the docket in unredacted form **by the same date**.[13]

The Clerk of Court is directed to terminate ECF No. 157, to close the case, to enter judgment consistent with this Opinion, and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: August 5, 2021
     New York, New York

                                      JESSE M. FURMAN
                                  United States District Judge

---

[13] The audio recording and the transcript Maragh submitted can and will remain under seal, both for the reasons Defendants gave previously, *see* ECF No. 204, and because the Court did not rely on these materials in any way.